**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Michelle Ann BELL, Defendant–
Appellee.**

**No. 92–2058.**

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 10, 1992.

Decided May 5, 1993.

---

Steven M. Colloton, Asst. U.S. Atty., Cedar Rapids, IA, for plaintiff-appellant.

Loraine S. Ingels, Cedar Rapids, IA, for defendant-appellee.

Before RICHARD S. ARNOLD, Chief Judge, FLOYD R. GIBSON, Senior Circuit Judge, and LOKEN, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

The government appeals the district court's [1] decision to use the Sentencing Guidelines in effect when Michelle Bell committed her crime instead of the Guidelines in effect when she was sentenced. We affirm.

## I. BACKGROUND

On July 1, 1991, Bell possessed a firearm, and on November 19, 1991, she pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The Probation Office applied the Sentencing Guidelines in effect on the date Bell committed her offense and calculated Bell's offense level as 10 by starting at an offense level of 12 based on U.S.S.G. § 2K2.1(a)(2) and subtracting 2 for Bell's acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. Bell's criminal history score of VI resulted in a Guideline range of 24 to 30 months.

---

1. The Honorable David R. Hansen, United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

The government objected, contending that 18 U.S.C. § 3553(a)(4) required application of the Guidelines that went into effect on November 1, 1991. Under these new guidelines, Bell's offense level would have been 20 based on U.S.S.G. 2K2.1(a)(4); to this, four more levels would have been added based on U.S.S.G. 2K2.1(b)(5), then two levels subtracted for Bell's acceptance of responsibility, resulting in an adjusted offense level of twenty-two. Based on Bell's criminal history score of VI, the new guidelines would have generated a sentencing range of 84–125 months.[2]

The district court, after carefully considering the government's objections, decided that applying the Guidelines in effect at the time of sentencing would violate the ex post facto clause of the Constitution and therefore applied the Guidelines in effect at the time Bell committed the offense. *United States v. Bell*, 788 F.Supp. 413, 422 (N.D.Iowa 1992).[3] The government appeals.

## II. DISCUSSION

### A.

The parties dispute whether this court has already addressed the ex post facto clause's application to the Sentencing Guidelines. We first confronted this issue in *United States v. Swanger*, 919 F.2d 94 (8th Cir.1990) (per curiam), where we remanded to the district court for resentencing with instructions to use the Guidelines in effect at the time the crime was committed. The opinion notes that the government conceded error, *id.* at 95, and at the

same time states that "sentencing under the amended Guidelines violated the ex post facto clause of the Constitution." *Id.* (citing *Miller v. Florida*, 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (an opinion by Justice O'Connor holding that retrospective application of Florida's sentencing guidelines violates the ex post facto clause)). Since *Swanger* was decided, this court has frequently reiterated its belief that retrospective application of the Guidelines implicates the ex post facto clause. *E.g., United States v. Gullickson*, 981 F.2d 344, 346 (8th Cir.1992); *United States v. Johnston*, 973 F.2d 611, 613 n. 2 (8th Cir. 1992), *cert. denied*, — U.S. ——, 113 S.Ct. 1019, 122 L.Ed.2d 165 (1993); *United States v. Edgar*, 971 F.2d 89, 93 n. 4 (8th Cir.1992).[4]

The government argues *Swanger* did not decide the issue because it was decided on the basis of the government's concession. It relies principally upon *Young v. United States*, 315 U.S. 257, 62 S.Ct. 510, 86 L.Ed. 832 (1942), where the Supreme Court stated that

[t]he considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed. The public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding.... [O]ur judgments are precedents, and the proper administration of the criminal law cannot

---

2. If § 2K2.1(b)(5) (four level enhancement if firearm possessed in connection with another felony) did not apply, the Guideline range would be 57–71 months, which is still greater than the range prescribed by the former guidelines.

3. The district court departed upward because Bell's criminal history score did not adequately reflect her past criminal activity, *see* U.S.S.G. § 4A1.3, and sentenced her to sixty-four months of imprisonment.

4. Our indications in this regard are consistent with those of all but one of the other circuits. *See, e.g., United States v. Molina*, 952 F.2d 514, 522–23 (D.C.Cir.1992); *United States v. Harotunian*, 920 F.2d 1040, 1042 (1st Cir.1990); *United States v. Young*, 932 F.2d 1035, 1038 n. 3 (2d

Cir.1991); *United States v. Kopp*, 951 F.2d 521, 526 (3d Cir.1991); *United States v. Morrow*, 925 F.2d 779, 782–83 (4th Cir.1991); *United States v. Suarez*, 911 F.2d 1016, 1021–22 (5th Cir.1990); *United States v. Nagi*, 947 F.2d 211, 213 n. 1 (6th Cir.1991); *United States v. Sweeten*, 933 F.2d 765, 772 (9th Cir.1991) (per curiam); *United States v. Underwood*, 938 F.2d 1086, 1090 (10th Cir.1991); *United States v. Worthy*, 915 F.2d 1514, 1516 n. 7 (11th Cir.1990); *but see United States v. Bader*, 956 F.2d 708, 709 (7th Cir.1992) (criticizing "some opinions in other circuits" for failing to "explain why a change in the [sentencing] guidelines offends the ex post facto clause when a change in the parole release guidelines does not....").

be left merely to the stipulation of parties.

315 U.S. at 258–59, 62 S.Ct. at 511 (citations omitted). However, the Court went on to discuss the legal issues involved and arrived at a holding that represents unquestioned precedential value. Thus, *Young* stands for the proposition that courts should not announce rules of law based solely upon a confession of error by one of the parties. If a case is to be disposed of based solely upon a confession of error, the court should clearly indicate that it is not announcing a rule of law. *Cf. Petite v. United States*, 361 U.S. 529, 531, 80 S.Ct. 450, 451, 4 L.Ed.2d 490 (1960) (per curiam) (case remanded based on government's confession of error without "remotely intimating in any degree an opinion on the question [presented to the Court.]").

The government would have us believe the *Swanger* court did not conduct an independent examination of the legal issues involved simply because the court's discussion was brief and did not address several arguments that have been raised in this case. We reject the government's position because the *Swanger* court fully stated the issue and held that, under the facts presented, there was a violation of the ex post facto clause. We of course are bound by *Swanger* and are in full agreement with its holding that, in a situation such as the one at bar, the ex post facto clause is violated if the later, more onerous Guideline is applied.

### B.

Although the outcome in this case is governed by our decision in *Swanger*, we think it useful to expound upon that decision and further explain why we believe the retroactive application of harsher Guidelines violates the ex post facto clause.

Article I, section 9 of the Constitution prohibits Congress from passing ex post facto laws. The implications of this clause are unusually clear:

"It is settled, by decisions of [the Supreme] Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; *which makes more burdensome the punishment for a crime, after its commission*, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto."

*Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169–70, 46 S.Ct. 68, 68, 70 L.Ed. 216 (1925)) (emphasis added).[5] There can be no serious doubt that Bell's punishment was made more burdensome after her crime was committed. At the time Bell's crime was committed, the district court could not have imposed a sentence greater than thirty months. *See United States v. Cox*, 921 F.2d 772, 774 (8th Cir.1990) (court cannot depart upward based on its belief the Guideline-based sentence is too lenient). If the Guidelines in effect at the time of Bell's sentencing are used, the district court would have to impose a minimum sentence of eighty-four months.[6] This unquestionably constitutes additional punishment. The ex post facto clause does not apply to changes in "procedures by which a criminal case is adjudicated, as opposed to changes in the substantive law of crimes." *Collins*, 497 U.S. at 45, 110 S.Ct. at 2720. However, this change in the Guidelines "changes the legal consequences of acts committed before the provision's effective date," and "it is the effect, not the form, of the law that determines whether it is ex post facto." *Weaver v. Graham*, 450 U.S. 24, 31, 101

---

5. *Collins, Beazell,* and several other cases cited in this opinion address the ex post facto clause as it applies to the states, U.S. Const. art. I, § 10; however, the analysis is the same under both clauses.

6. It is true that, if the factors identified in 18 U.S.C. § 3353(b) were present, the district court would have the discretion to depart upward or downward. However, no such factors were found in this case (the departure here being based on the § 4A1.3), and we doubt that a subsequent change in the Guidelines would constitute a sufficient ground for a downward departure. In any event, we discuss the effect of § 3353(b) more fully in part II.B.2, *infra.*

S.Ct. 960, 965, 67 L.Ed.2d 17 (1981) (footnote omitted); therefore the change causes the precise effect the ex post facto clause is designed to guard against.

The focus of the government's position is that the ex post facto clause does not apply because 1) the Commission is an extension of the judicial, not the legislative, branch, and 2) the Guidelines are not laws within the meaning of the ex post facto clause. We reject both contentions.

### 1. The Commission's Status as a "Judicial Agency"

■ The government contends the ex post facto clause does not apply to the Commission because it is a judicial agency and because the Supreme Court has held that "[t]he Ex Post Facto Clause is a limitation upon the powers of the Legislature, *see Calder v. Bull,* 3 [U.S.] Dall. 386 [1 L.Ed. 648] (1798), and does not *of its own force* apply to the Judicial Branch of government." *Marks v. United States,* 430 U.S. 188, 191, 97 S.Ct. 990, 992, 51 L.Ed.2d 260 (1977) (emphasis added). Though the government reads this statement broadly to bar application of the ex post facto clause to actions of judicial agencies (such as the Commission), we do not do so for two reasons. First, the quoted sentence does not say the clause *never* applies to actions of the judicial branch; it merely says it does not do so "of its own force." Here, the actions of the judicial branch (through the Commission) have been augmented by the legislature in that the Guidelines promulgated by the Commission are binding upon all federal courts; thus, the actions of the Commission are incorporated into the law of this nation. Congress cannot avoid the proscriptions of the ex post facto clause simply by delegating its lawmaking function to a judicial agency and claiming the result is insulated from the constitutional limitations on its legislative powers. *Yamamoto v. United States Parole Comm'n,* 794 F.2d 1295, 1300 (8th Cir.1986) (per curiam); *see also Cummings v. Missouri,* 71 U.S. (4 Wall.) 277, 328–29, 18 L.Ed. 356 (1866) (finding parts of Missouri Constitution violative of ex post facto clause because "as the State, had she attempted the course supposed, would have failed, it must follow that any other mode producing the same result must equally fail.") (quotation on page 329). Indeed, the very statutory provisions that mandate the Guidelines be used elevates them to the status of laws.

The second reason for rejecting the government's reliance on *Marks* is because the isolated sentence it cites is based on the Supreme Court's earlier decision in *Frank v. Magnum,* 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915). There, a petitioner for a writ of habeas corpus alleged he was entitled to the writ because the Supreme Court of Georgia had affirmed his conviction in contradiction with its earlier cases, thereby violating the ex post facto clause. *Id.* at 343, 35 S.Ct. at 593. The United States Supreme Court held the ex post facto clause "does not reach erroneous or inconsistent decisions by the courts." *Id.* at 344, 35 S.Ct. at 594. The Court did *not* say the ex post facto clause does not apply to actions of the courts that are not characterized as "decisions." This distinction is particularly relevant given the Court's holding that the establishment of the Commission within the Judicial Branch does not violate the Constitution's required separation of powers because the Commission "is not a court and does not exercise judicial power." *Mistretta v. U.S.,* 488 U.S. 361, 384–85, 109 S.Ct. 647, 661, 102 L.Ed.2d 714 (1989); *see also id.* at 393, 109 S.Ct. at 666 ("the Commission is not a court, does not exercise judicial power, and is not controlled by or accountable to members of the Judicial Branch."). The notion that the ex post facto clause does not apply to judicial decisions has no application here because the Commission, though located in the Judicial Branch, does not act like a court and does not hand down judicial decisions; instead, it acts like an agency, with the power (delegated by Congress) to prescribe sentences for criminals.

### 2. Are the Guidelines "Laws" Within the Meaning of the Ex Post Facto Clause?

■ The government first argues the guidelines are not laws because they are

not approved by both houses of Congress in the ordinary sense. We reject this argument because, as noted above, Congress cannot escape the Constitutional constraints on its power by delegating its lawmaking function to an agency. *Yamamoto,* 794 F.2d at 1300; *see also Cummings,* 71 U.S. (4 Wall.) at 328–29 (holding parts of state constitution constitute "laws" for the purposes of the ex post facto clause). If this contention were true, Congress could avoid all the Constitutional limitations on its power by delegating authority to agencies. Clearly, this would make a mockery of the Constitution.

The government next advances Congress' position that the sentencing guidelines are comparable to the parole guidelines. Because courts upheld the retrospective application of the parole guidelines, retrospective application of the sentencing guidelines is acceptable. We disagree.

Most courts that considered the constitutionality of retrospective application of the parole guidelines concluded they were not laws because they were too flexible or because they merely guided the Parole Commission's extensive discretion in parole matters. *Yamamoto,* 794 F.2d at 1297–98 & n. 7 (citing cases). In *Yamamoto,* we noted that Congress "clearly expressed [its] intent that the guidelines would not significantly restrict the Parole Commission's discretion in determining the length of time a prisoner should serve before parole...." *Id.* at 1300 (emphasis deleted); *see also Miller,* 482 U.S. at 435, 107 S.Ct. at 2453 (noting Parole Commission had "unfettered discretion" to make parole decisions) (citation omitted); *Jones v. United States Bureau of Prisons,* 903 F.2d 1178, 1182–83 (8th Cir.1990) (discussing broad degree of discretion possessed by the Parole Commission, notwithstanding the parole guidelines).

The government contends the Sentencing Guidelines are similar to the parole guidelines in that they merely guide and direct the district court's discretion to sentence within the statutory minimums and maximums established by Congress for each crime. This description does not accurately portray the Guidelines' role in the sentencing process. Sentencing courts must impose sentences consistent with the Guidelines; they are not merely a factor to be considered by the sentencing court. *E.g., Johnston,* 973 F.2d at 613. In this sense, the Guidelines represent (in a typical case) additional minimums and maximums that are superimposed over the minimums and maximums statutorily enacted by Congress; a court is required to impose a sentence that is both between the applicable statutory minimum/maximum and within the Guideline-generated minimum/maximum.

■ In a truly atypical case, a district court is permitted to depart from the guidelines. 18 U.S.C. § 3553(b) permits the district court to exercise its discretion and depart (upward or downward) if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the [Commission]...." Section 3553(b) is to be applied "only in rare cases," *United States v. Johnson,* 908 F.2d 396, 399 (8th Cir.1990), and does not provide district courts with the degree of discretion necessary to prevent the Guidelines from being considered laws. Although a court has discretion to grant or deny a departure once a sufficiently unusual circumstance is present, *e.g., United States v. Perkins,* 929 F.2d 436, 438 (8th Cir.1991), appellate courts scrutinize such decisions to insure that the factors relied on are truly of a kind or degree not already considered or rejected by the Commission; in doing so, we conduct an independent review to determine whether the factor has been considered by the Commission. *United States v. Estrada,* 965 F.2d 651, 653 (8th Cir.1992). Thus, the district court has no ability to exercise discretion because its power is firmly controlled by the Commission. We conclude section 3353(b) does not give district courts the degree of discretion to ignore the guidelines sufficient to prevent the obvious conclusion that the guidelines dictate defendants' sentences. *Cf. Miller,* 482 U.S. at 435, 107 S.Ct. at 2453 (noting Florida's sentencing guidelines were not

similar to the "unfettered discretion" granted the Parole Commission because it imposed hurdles in front of the sentencing court's ability to exercise discretion and depart from the guidelines); *see also United States v. Galloway,* 976 F.2d 414, 439–40 n. 4 (8th Cir.1992) (en banc) (Bright, Sr. J., dissenting) (noting lack of discretion afforded to district judges by the Guidelines).

Relying on *Miller,* the government claims this limited degree of discretion is sufficient to prevent the guidelines from being considered laws. In *Miller,* the Supreme Court noted Florida's sentencing guidelines did not preserve the degree of discretion present in the parole guidelines because a sentencing judge could depart from the guidelines based only on factors not already present in the guidelines if the factor was found to exist beyond a reasonable doubt. 482 U.S. at 435, 107 S.Ct. at 2453. The former element—that the factor must not already be a part of (or rejected from) the guidelines—is similar to the requirement under § 3553(b). The government focuses upon the differing evidentiary burdens—federal courts do not need to meet the high standard imposed on Florida's courts—but this does not demonstrate discretion. A court does not have discretion to find a fact; facts are determined by the evidence. A court cannot find (or fail to find) a fact simply because it desires to change the sentence. The common aspect between the federal and Florida's guidelines—the high hurdles preventing the court from departing—demonstrates the lack of discretion possessed by the sentencing courts operating under both sets of guidelines.

■ The government also argues the district courts have discretionary power under the Guidelines because they have the ability to make numerous factual decisions that will affect the sentence imposed by the Guidelines. For instance, the Guidelines will produce different results depending upon the court's findings regarding the defendant's relevant conduct, U.S.S.G. § 1B1.3, acceptance of responsibility, *id.* § 3E1.1, role in the offense, *id.* § 3B1.1, as well as a host of factors relevant to the commission of each specific crime. These aspects of the Guidelines do not represent avenues of discretion available to sentencing courts. As stated above, a district judge must make findings of fact regarding a particular defendant's actions and then apply the corresponding Guideline. In this case, for instance, the district court could not have simply decided that Bell should be treated with leniency and therefore "find" that she accepted responsibility when she did not; similarly, the court could not decide Bell should be punished harshly and therefore find she did not accept responsibility for her crimes when the evidence indicates that she did. Though these are factual findings that we review for clear error, they are not discretionary decisions; sentencing courts apply these factors with an eye toward the evidence, not with a goal of arriving at a particular sentence.[7]

The government also contends the Commission has the discretion to amend the Guidelines. We fail to see how this is relevant. For purposes of the ex post facto clause, the focus is on the punishment Bell faces. Because the punishment is going to be determined by the sentencing court (as dictated by the Guidelines), the key is the degree of discretion possessed by the district court. The fact that the Commission may amend the Guidelines in the future does not help Bell, nor is it relevant to the analysis. Furthermore, given that the constitutionality of the Guidelines depends, in part, upon the distinction between the Commission's function and the traditional judicial function, *Mistretta,* 488 U.S. at 384–94, 109 S.Ct. at 660–66, it is improper to attribute the Commission's powers and abilities to the rest of the judiciary.[8]

---

7. In reality, these decisions further demonstrate the limitations on sentencing judges' discretion. Formerly, a judge could consider a defendant's role in the offense without any limitation; now, the Guidelines prescribe the result for the judge.

8. The government also contends the ex post facto clause has not been violated because Bell could not legitimately expect any particular sentence within the statutory minimum and maximum. *Miller* provided an easy answer to this

**1452**

■ Finally, we are told that applying the ex post facto clause to the Guidelines presents serious administrative and judicial difficulties. We do not detail these here; rather, we note that administrative difficulty does not appear to have a role in ex post facto analysis. The same difficulties would be present if Congress chose to annually amend the statutory minimums and maximums (or other elements of the criminal law), but the ex post facto clause does not step aside merely because the law changes rapidly. To the extent there is concern that defendants will be allowed to "pick" the most favorable portions from both sets of Guidelines, we have already indicated that this will not be allowed. *U.S. v. Lenfesty*, 923 F.2d 1293, 1299 (8th Cir.1991).

## III. CONCLUSION

■ *Swanger* holds that the ex post facto clause is violated if a defendant is sentenced under the Guidelines in effect at the time of sentencing when those Guidelines produce a sentence harsher than one permitted under the Guidelines in effect at the time the crime is committed. The district court correctly determined that the Guidelines in effect at the time Bell committed her crime were more lenient than those in effect at the time she was sentenced, so we affirm the district court.

argument when it said " 'one is not barred from challenging a change in the penal code on ex post facto grounds simply because the sentence he received under the new law was not more onerous than that which he might have received

under the old.' " *Miller,* 482 U.S. at 432, 107 S.Ct. at 2452 (quoting *Dobbert v. Florida,* 432 U.S. 282, 300, 97 S.Ct. 2290, 2301, 53 L.Ed.2d 344 (1977)).