**UNITED STATES of America, Appellee,**

v.

**Reginald LEVI, Appellant.**

No. 93–1451.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 18, 1993.

Decided Aug. 27, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Oct. 19, 1993.

Lee Lawless, St. Louis, MO, argued, for appellant.

Howard J. Marcus, St. Louis, MO, argued (Stephen B. Higgins and Howard J. Marcus, on the brief), for appellee.

Before FAGG, WOLLMAN, and HANSEN, Circuit Judges.

HANSEN, Circuit Judge.

Reginald Levi appeals the 13–month term of imprisonment the district court[1] imposed on him following revocation of his supervised release. He contends that his sentence violates the Ex Post Facto Clause because the court relied on a policy statement in the Sentencing Guidelines, U.S.S.G. § 7B1.3(d),

---

1. The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

which was not in effect at the time he committed the underlying offense. He also contends that the district court erred in sentencing him pursuant to U.S.S.G. § 7B1.3(d) because it conflicts with the language of the enabling statute, 18 U.S.C. § 3583(e). We affirm.

## BACKGROUND:

On June 22, 1990, Reginald Levi pled guilty to possession of approximately 163.94 grams of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The district court[2] sentenced him to a 21–month period of imprisonment to be followed by a three-year term of supervised release. Levi completed his prison sentence and began serving his supervised release term. In November of 1992, finding that Levi had violated the terms of his supervised release, the court[3] modified the conditions to mandate completion of six months in a work release setting after which Levi would serve the remainder of his supervised release on the same conditions as previously imposed. The work release program falls within the definition of "community confinement" under the Sentencing Guidelines. U.S.S.G. § 5F1.1, comment. (n. 1).

On February 3, 1993, while Levi was participating in the work release program, the court again found that he had violated the conditions of his supervised release. Based on the new violations, the district court revoked Levi's supervised release and imposed a term of imprisonment totaling 13 months: nine months as a sanction for the most recent violations of supervised release and four months representing the remaining unserved portion of his work release program.

## DISCUSSION:

On appeal, Levi argues that the district court sentenced him in violation of the Ex Post Facto Clause by using U.S.S.G. § 7B1.3(d) to impose the additional four months of imprisonment representing the portion of the work release component of his supervised release that remained unserved. Section 7B1.3(d)[4] became effective November 1, 1990, subsequent to the time Levi committed the underlying offense and while he was serving his original 21–month term of imprisonment. It did, however, become effective before he began serving any of his supervised release term.

■ "Article I, section 9 of the Constitution prohibits Congress from passing ex post facto laws." *United States v. Bell*, 991 F.2d 1445, 1448 (8th Cir.1993). It is well settled that any statute " *'which makes more burdensome the punishment for a crime, after its commission* ... is prohibited as ex post facto.' " *Id.* (emphasis in original) (quoting *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990)). Two elements are necessary to a finding that a penal law is ex post facto: (1) it must be retrospective, applying to events occurring before its enactment; and (2) it must disadvantage the defendant. *Miller v. Florida*, 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987); *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981). This test, however, assumes the court is construing the effects of a penal "law." Before ever reaching the two listed elements, we must resolve whether Chapter 7 policy statements are "laws" that implicate the Ex Post Facto Clause.

■ It is clear that the Sentencing Guidelines are laws. *See United States v. Bell*, 788 F.Supp. 413, 420 (N.D.Iowa 1992) (holding Sentencing Guidelines are "laws" for purpose of ex post facto analysis), *aff'd*, 991 F.2d 1445 (8th Cir.1993). Retrospective ap-

**2.** The Honorable John F. Nangle, Senior United States District Judge for the Eastern District of Missouri.

**3.** The Honorable Donald J. Stohr, United States District Judge for the Eastern District of Missouri.

**4.** U.S.S.G. § 7B1.3(d) states as follows:
Any restitution, fine, community confinement, home detention, or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation shall be ordered to be paid or served in addition to the sanction determined under § 7B3.4 (Term of Imprisonment), and any such unserved period of community confinement, home detention, or intermittent confinement may be converted to an equivalent period of imprisonment.

plication of an amended sentencing guideline that makes the sentence more onerous than if the court had applied the guideline in effect at the time the crime was committed violates the Ex Post Facto Clause. *Bell,* 991 F.2d at 1447–49. Additionally, commentary and policy statements interpreting a guideline, or prohibiting a district court from taking a specified action, are authoritative and binding on the courts. *See Stinson v. United States,* —— U.S. ——, ——, 113 S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993) ("commentary in the Guidelines Manual that interprets or explains a guideline is authoritative unless it violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, that guideline"); *Williams v. United States,* —— U.S. ——, ——, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992) (where "a policy statement prohibits a district court from taking a specified action, the statement is an authoritative guide to the meaning of the applicable guideline").

■ While the Sentencing Guidelines, accompanying interpretative commentary, and some policy statements are binding on the court, Chapter 7 policy statements are a different breed. Section 7B1.3 is clearly labeled, "Policy Statement"; it is neither a guideline nor a policy statement that interprets a guideline. Chapter 7 policy statements fulfill a special advisory role. This court has found that the sentencing court is required only to "consider" Chapter 7 policy statements, *United States v. Jones,* 973 F.2d 605, 608 (8th Cir.1992) (citing 18 U.S.C. § 3583(e)), and that "the Sentencing Commission intended the Chapter 7 policy statements to ·be merely advisory." *Id.* at 607; *see also United States v. Oliver,* 931 F.2d 463, 465 (8th Cir.1991) ("there are no binding guidelines addressing the sentence for a violation of a condition of supervised release, only a policy statement about a court's options in such a situation"). The Sentencing Commission expressly commented in Chapter 7 that it chose to issue advisory policy statements for the revocation of supervised release because a policy statement provides the district court with "greater flexibility"

than a guideline. U.S.S.G. Ch. 7, Pt. A 3(a) (stating also that after period of evaluation, the Commission intends to promulgate "revocation guidelines"). Being merely ·advisory, a Chapter 7 policy statement is not a law within the meaning of the Ex Post Facto Clause. One might be so bold as to say that Chapter 7 policy statements are "guidelines" in the ordinary and true sense of the word, but not in the sense in which the Sentencing Guidelines use the word "guideline" as a synonym for "regulation with the force of law." Consequently, the fact that the district court considered a Chapter 7 policy statement that had been amended subsequent to Levi's initial sentencing does not implicate the Ex Post Facto Clause.[5] *But see United States v. Lewis,* 998 F.2d 497 (7th Cir.1993) (holding that *Stinson* compels a finding that all policy statements are binding, even Chapter 7 policy statements).

■ Levi next asserts that the district court exceeded its authority by imposing on him both a sentence for his violation of supervised release and a sentence for the unserved portion of his work release. He argues that this result is contrary to the expressly disjunctive options available under the enabling statute, U.S.C. § 3583(e).

Under § 3583(e), four options are available to a district court in fashioning a sanction upon violation of the conditions of supervised release. The court may (1) terminate a term of supervised release, (2) extend a term of supervised release if less than the maximum was previously imposed, (3) revoke a term and require prison time for all or part of the term, or (4) order the person to remain at his place of residence. 18 U.S.C. § 3583(e)(1)–(4). These four options are stated in the disjunctive.

The language of the third option specifically provides as follows:

(e) **Modifications of conditions or revocation.** The court may ...

(3) revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previous-

---

**5.** Because we hold that Chapter 7 policy statements are not laws, we do not address whether they were applied retroactively or whether the defendant was disadvantaged thereby.

ly served on postrelease supervision, if it finds by a preponderance of the evidence that the person violated a condition of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure that are applicable to probation revocation and to the provisions of applicable policy statements issued by the Sentencing Commission, except that a person whose term is revoked under this paragraph may not be required to serve more than 3 years in prison if the offense for which the person was convicted was a Class B felony, or more than 2 years in prison if the offense was a Class C or D felony; ...

18 U.S.C. § 3583(e). This language explicitly "permits a sentencing judge to revoke an offender's term of supervised release, *and* to require the offender to serve in prison *all or part of the term of supervised release without credit for time previously served on postrelease supervision."* United States v. Schrader, 973 F.2d 623, 624–25 (8th Cir.1992) (emphasis added). In *Schrader*, the court noted that if the district court has the power to impose imprisonment for the entire term of supervised release, "it certainly has the power under that subsection to impose a less drastic sanction." *Id.* at 625. We conclude that the district court did not combine the options of § 3583(e), and that the sentence is fully authorized by the language of subsection three.

■ Levi also contends that the policy statement at issue, U.S.S.G. 7B1.3(d) (Nov. 1992), conflicts with the language of the statute, so that the district court erred in considering it. We disagree.

Section 3583(e)(3) directs the court to consider the "applicable policy statements" in fashioning a sentence upon revocation of supervised release.[6] Sentencing Guidelines § 7B1.3(d) (Nov. 1992) specifically allows the court to convert an already imposed but unserved period of community confinement into prison time and require it to be served in addition to the sanction imposed for violating supervised release. This is not inconsistent with the broad language of § 3583(e)(3). As previously discussed, § 3583(e)(3) allows the court to revoke a term of supervised release and impose a sentence of imprisonment, without specifying how the court must determine the length of the prison term. As long as the revocation sentence imposed does not exceed either the length of the originally-imposed period of supervised release or the maximum term of imprisonment authorized by § 3583(e)(3), whichever is less, there is no conflict between the two provisions.

Even the policy statements in effect at the time the district court originally sentenced Levi authorized the subsequent revocation sentence that the district court actually imposed upon violation of his supervised release. At the time of Levi's original sentencing on the underlying criminal offense, U.S.S.G. § 7A1.3 (Nov. 1989) was in effect. That section provided that upon a finding of a violation of supervised release involving new criminal conduct, "the court shall revoke supervised release." U.S.S.G. § 7A1.3(a) (Nov. 1989). It further provided that upon finding any violation of supervised release not involving new criminal conduct, "the court may, (1) revoke supervised release; or (2) extend the term of supervised release

**6.** There remains a question of whether "applicable policy statements," as used in this section, are those in effect at the time a defendant was originally sentenced or those in effect at the time of his revocation violation and sentencing. This circuit has not yet decided this question and it is unnecessary for us to reach it in this case. Nonetheless, we note that there is some authority for finding that the "applicable policy statements" are those in effect at the time of sentencing for the supervised release violation. The Ninth Circuit has recently held that when sentencing for a violation of supervised release, courts should apply guidelines and policy statements that are in effect at the time the defendant is sentenced for violating the terms of his super-

vised release. *See United States v. Schram,* No. 92–30023/30028/30029, 1993 WL 270644 (9th Cir. July 22, 1993) (court assumes Chapter 7 policy statements are binding laws). Also, we note that in the probation revocation context, 18 U.S.C. § 3565(a)(2) clearly requires the court to impose a sentence that was available at the time of the initial sentencing, which requires the use of guidelines and policy statements in existence at the time of the original sentence. *See United States v. Williams,* 943 F.2d 896, 896 (8th Cir. 1991); *United States v. Von Washington,* 915 F.2d 390, 391–92 (8th Cir.1990). No similar statutory requirement exists in the context of supervised release. *See United States v. Stephenson,* 928 F.2d 728, 730 (6th Cir.1991).

and/or modify the conditions of supervised release." U.S.S.G. § 7A1.3(b) (Nov. 1989). In a separate section, the old version of Chapter 7 stated that "[u]pon revocation of supervised release, no credit shall be given (toward any term of imprisonment ordered) for time previously served on post-release supervision." U.S.S.G. § 7A1.4(b) (Nov. 1989). This section indicated parenthetically that it assumed the court could impose a term of imprisonment upon revocation of supervised release and it gave no credit for time already served on supervised release.

The only difference between the 1992 version, U.S.S.G. § 7B1.3(d) (Nov. 1992), and the older version, U.S.S.G. §§ 7A1.3 & 7A1.4 (Nov. 1989), is that the current version is more structured. The current version offers the court specific advice on what to consider when determining the amount of imprisonment to impose upon revocation of supervised release. The 1989 version did not offer the court explicit advice in the process of determining the length of a revocation sentence. Both versions, however, are subject to the maximum prison terms allowed under § 3583(e)(3), which has not changed since Levi's original sentencing. We are convinced that the district court could have reached the same revocation sentence under either the 1989 or 1992 version of the Chapter 7 policy statements.

In this case, Levi's residence in a work release center was a special condition of a three-year term of supervised release. Pursuant to § 3583(e)(3), a sentence of up to two years could have been imposed on Levi upon revocation of his supervised release. The district court imposed a 13-month sentence which is well within the statutory two-year maximum provided by § 3583(e). *See United States v. Krabbenhoft*, 998 F.2d 591, 594 (8th Cir.1993). Regardless of which Chapter 7 policy statements the district court considered in arriving at the 13-month total, it is clear that, contrary to Levi's contentions, the sentence imposed is authorized by the terms of 18 U.S.C. § 3583(e)(3), and that none of the applicable policy statements conflict with the language of that statute.

**CONCLUSION:**

The sentence imposed by the district court does not violate the Ex Post Facto Clause because Chapter 7 policy statements are not laws. Further, the sentence is authorized by, and not inconsistent with, the provisions of 18 U.S.C. § 3583(e)(3) and applicable policy statements. Accordingly, we affirm the judgment of the district court.