54 F.3d 777
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Marcos YRLAS, Defendant-Appellant.
 No. 94-1702.
 United States Court of Appeals, Sixth Circuit.
 May 19, 1995.
 
 Before: LIVELY, RYAN, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The defendant, Marcos Yrlas, appeals his sentence of 36 months' incarceration, imposed as a result of the district court's determination that Yrlas had violated the conditions of his supervised release. For the reasons stated below, we affirm the district court's judgment.
 
 
 2
 Defendant Yrlas was originally sentenced to 45 months in prison and six years of supervised release in 1991 for possession with the intent to distribute cocaine. Ten days after his release from prison, Yrlas was arrested and charged with breaking and entering an occupied dwelling with the intent to commit a felony, and with felonious assault. Subsequently, he was charged with nine violations of the conditions of his supervised release, stemming from his involvement in these offenses, his use of a pistol during these offenses, his association with persons engaged in criminal activity, his failure to participate in a drug treatment program, and his failure to report to his probation officer within 72 hours of the incident leading to his arrest.
 
 
 3
 Several witnesses testified at the defendant's hearing on the violations of supervised release. Billy Ray McLaren testified that on April 3, 1994, the defendant and two other men came to the house where McLaren was sleeping, knocked, gestured to the window in an apparent invitation to fight, and kicked down the door. McLaren said that the defendant was carrying a gun. The defendant cursed at McLaren, yelling at him not to leave. McLaren testified that he later saw the defendant and his friends laugh as they drove away in a minivan. Roy Lopez testified that he was sleeping in the house when Joe Garcia, Mondo Ramos, and another person entered the room and that the unidentified third person began hitting him with a bottle. Although he refused to say in court that the defendant was the person who hit him, Lopez acknowledged making an earlier statement that the defendant and another person had hit him with a bottle until he passed out, and that the defendant took rings from his fingers. In addition to these witnesses, an investigator testified that the defendant admitted kicking in the door, saying that he did so because he was looking for his girlfriend. The investigator hypothesized that the incident was gang-related.
 
 
 4
 The district court found that the defendant had committed a felonious assault by striking Lopez with a bottle and that he had broken and entered with the intent to commit a felony. The court determined that these incidents constituted "Grade A" violations under the Sentencing Guidelines and sentenced Yrlas to a term of 36 months in prison, the maximum term for violation of supervised release.
 
 
 5
 On appeal, the defendant challenges the court's finding that he committed Grade A violations and contends the 36-month sentence exceeds the sentencing range contained in USSG Sec. 7B1.4 U.S.S.G. Sec. 7B1.1 divides violations of supervised release into three types -- Grades A, B, and C. Grade A violations include "conduct constituting ... [an] offense punishable by a term of imprisonment exceeding one year that (i) is a crime of violence, (ii) is a controlled substance offense, or (iii) involves possession of a firearm...."
 
 
 6
 The defendant insists that he did not commit Grade A violations, but rather, committed only the misdemeanor offenses of illegal entry and possibly assault and battery, which would constitute Grade C violations under Sec. 7B1.1. In support of this contention, he argues that Lopez did not recognize him as the assailant. He also insists that McLaren only saw him enter the house without permission and that McLaren was not struck. Thus, he argues, the evidence does not establish anything except illegal entry and possibly simple assault.
 
 
 7
 In our view, however, the record clearly supports the district court's conclusion that the defendant committed Grade A violations. Lopez's testimony, indicating that the third of the three intruders struck him with a bottle, points to the defendant as the perpetrator by the process of elimination. Moreover, McLaren indicated that the defendant kicked down the door, held a gun in his hand, and gestured as if he wanted to fight. His cursing at McLaren also supports this assaultive intent. This conduct constitutes a "crime of violence", which is defined in U.S.S.G. Sec. 4B1.2 as
 
 
 8
 any offense under federal or state law punishable by imprisonment for a term exceeding one year that ... has as an element the use, attempted use, or threatened use of physical force against the person of another, or ... is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.
 
 
 9
 Based on the proof in the record, we conclude that the district court did not err by finding that the defendant committed Grade A violations.
 
 
 10
 Nor do we find reversible error in the imposition of the defendant's sentence. The Sentencing Commission has issued a "policy statement" describing applicable ranges of imprisonment for violators of supervised release. See U.S.S.G. Sec. 7B1.4. The policy statement suggests that a person who has a criminal history category of IV and who commits a Grade A violation should be sentenced to 24-30 months in prison. The district court found, however, that the policy statement was not binding on the court and imposed the maximum sentence for violation of supervised release.
 
 
 11
 The defendant argues that the court erred by imposing a 36-month sentence in excess of the policy statement's range. As this court discussed in United States v. Sparks, 19 F.3d 1099 (6th Cir. 1994), however, the policy statements in Chapter 7 of the Sentencing Guidelines must be considered by the sentencing court, but are not binding. Sparks acknowledges that the Supreme Court has held that commentary and policy statements interpreting guidelines or prohibiting certain court actions are binding on the courts. United States v. Stinson, 113 S.Ct. 1913, 1917 (1993). Nevertheless, this court followed the reasoning of United States v. Levi, 2 F.3d 842, 845 (8th Cir. 1993), which distinguished the policy statements in Chapter 7 as fulfilling "a special advisory role" rather than interpreting a guideline. The introduction to Chapter 7, moreover, states that the Sentencing Commission chose to issue policy statements rather than guidelines in order to give flexibility to the Commission and to the courts. U.S.S.G. Ch. 7, Pt. A., 2(a). In view of our previous interpretation of the Chapter 7 policy statements as non-binding, we hold that the district court did not err by departing from the recommended range.
 
 
 12
 The judgment of the district court is AFFIRMED.