110 F.3d 65
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Pasquale FERRUCCIO, Defendant-Appellant.
 Nos. 95-4281, 96-3612.
 United States Court of Appeals, Sixth Circuit.
 March 25, 1997.
 
 Before: WELLFORD, RYAN, and SILER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Pasquale Ferruccio served a sentence following his guilty plea to a RICO criminal charge, and subsequently began his three-year period of supervised release. The issue before us arose from events that occurred during that period of supervised release.
 
 
 2
 A few weeks after his release from prison, Ferruccio attended several meetings with business associates Lenine Strollo and Henry Zottola, both of whom are convicted felons. The FBI discovered those meetings and sought to use Ferruccio's contacts to obtain information about Strollo's illegal activities. The FBI engaged in several discussions with Ferruccio about the matter and kept transcripts of those discussions in its files.
 
 
 3
 Later, Ferruccio's probation officer, Susan Worstall, discovered that Ferruccio had associated with convicted felons, which she considered to be violative of the following standard condition of his supervised release:
 
 
 4
 9) the defendant shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer....
 
 
 5
 Worstall filed a violation report based on that conduct, and a revocation charge was brought before the district court. During those proceedings, Ferruccio moved to compel discovery of all of the statements he made to the FBI after his meetings had been discovered. In response to that motion, the government produced some of the statements, but indicated the statements that were not produced would "not be introduced by the government at the revocation hearing and are not relevant." The government claimed that such statements pertained to "collateral matters" and were "not discoverable under Federal Rules of Criminal Procedure 16 or 32.1." The district court found in favor of the government, reasoning that the rules did not preclude the FBI from withholding information that it did not intend to use at trial.
 
 
 6
 The district court ultimately decided to revoke Ferruccio's supervised release, and it sentenced him to the two-year statutory maximum sentence. This timely appeal ensued. Ferruccio raises the following arguments:
 
 
 7
 1) he did not violate the terms of his release because he was not associating with convicted felons; rather, his meetings involved an attempt to dissociate himself from such persons;[1]
 
 
 8
 2) the district court erred in denying his motion to compel discovery;
 
 
 9
 3) the district court erred in revoking his supervised release in the face of his "declining health" and other circumstances; and
 
 
 10
 4) the district court erred in imposing the statutory maximum 24-month sentence.
 
 
 11
 Upon consideration of each of those issues, we shall AFFIRM.[2]
 
 
 12
 In his brief, Ferruccio asserts that he and others had a large investment in a Puerto Rico casino hotel with Lenine Strollo. He does not deny that he had meetings with Strollo during the pertinent period, nor does he deny that Strollo became a convicted felon during the existence of their business relationship.[3] Ferruccio attended at least six meetings, and the circumstances indicated them to be somewhat surreptitious. Ferruccio and others involved were represented by attorneys who were allegedly preparing legal papers to terminate Ferruccio's obligations in the business. As stated above, the FBI discovered the meetings and approached Ferruccio about gathering information on Strollo. Sometime in January, 1995, after the meetings had taken place, the FBI informed the district court of its intention to work with Ferruccio, and the court entered an order dispensing of Ferruccio's obligation to contact his probation officer before engaging in any further contact with Strollo.
 
 
 13
 Ferruccio argues that he did not violate the "no association with felons" condition of his supervised release, because he met with such persons for a legitimate business purpose. Furthermore, he argues, he was attempting to cut off ties with Strollo and others, which should be construed as "disassociation" with felons, not "association." Under the circumstances, however, we are prone to agree with the government that the purposes of the meetings were essentially beside the point.[4] The probation condition unequivocally precludes such a meeting with a person in Strollo's situation unless permission was granted "by the probation officer. " It is undisputed that Ferruccio never attempted to tell his probation officer about his meetings. Furthermore, in light of standard condition # 12, Ferruccio was precluded from agreeing "to act as a informer" or as agent of any law enforcement agency "without the permission of the court." Such permission had not been given before the meetings took place.[5]
 
 
 14
 Therefore, in dealing with the merits, we conclude that Ferruccio's concession that the meetings took place, coupled with the additional evidence regarding the meetings, clearly shows that Ferruccio was engaged in prohibited association with convicted felons. The meetings were more than "incidental contacts" and they were not a mere "occupational association" for Ferruccio to work on a "legitimate job." See Arciniega v. Freeman, 404 U.S. 4 (1971), cited by defendant, and United States v. Local 1804 ILO, 44 F.3d 1091, 1096 (2d Cir.1995). Freeman supplies Ferruccio no support. Ferruccio's counsel at the hearing on violation, moreover, effectually admitted that there was such an association.[6]
 
 
 15
 With regard to Ferruccio's attempt to obtain his unredacted statements made to the FBI after his association was discovered, we agree with the district court that the government was obligated to disclose further details of his statements, but "only if actually used against" Ferruccio. See United States v. Guardino, 972 F.2d 682, 689 (6th Cir.1992). We find no error in the denial of further production or discovery, because the content of the statements beyond the admission about the six meetings was essentially immaterial; the part regarding the meetings was the relevant part which was divulged. This was, in conformity with Fed.R.Crim.P. 32(1)(a)(2), "disclosure of the evidence against" Ferruccio which was actually used at the hearing.
 
 
 16
 We pass next to Ferruccio's contentions that the district court improperly revoked his supervised release, and that his twenty-four month sentence represented an improper departure from the United States Sentencing Guidelines. Although the sentence was the maximum statutory period specified for such a violation, Ferruccio maintains that the sentence was improperly imposed because of his lack of cooperation with the government. At oral argument, Ferruccio's counsel argued that the sentence was unduly severe.
 
 
 17
 A district court's decision to revoke a defendant's supervised release should be reviewed "for fundamental unfairness or an abuse of discretion." United States v. Hamilton, 708 F.2d 1412, 1414 (9th Cir.1983). The sentence imposed after revocation of the supervised release "must reflect consideration of the factors listed in 18 U.S.C. § 3553, and may not be plainly unreasonable." United States v. Webb, 30 F.3d 687, 689 (6th Cir.1994); see also United States v. Jackson, 70 F.3d 874, 878-89 (6th Cir.1995). The policy statements regarding supervised release in Chapter 7 of the Sentencing Guidelines are advisory and non-binding on district courts. The district court must consider the policy statements but it may, in its discretion, then sentence the defendant within the statutory maximum--here, two years. United States v. West, 59 F.3d 32, 33-35 (6th Cir.), cert. denied, 116 S.Ct. 486 (1995); United States v. Cohen, 965 F.2d 58, 60 (6th Cir.1992); see 18 U.S.C. § 3583(e) (two-year maximum for Class C felony). Although the policy statements are not binding, they "are entitled to great weight because the Sentencing Commission is the expert body on federal sentencing." United States v. Hill, 48 F.3d 228, 231 (7th Cir.1995).
 
 
 18
 In revoking Ferruccio's supervised release and sentencing Ferruccio to the maximum two-year penalty, the district court reasoned as follows:
 
 
 19
 I'm aware of all the arguments made. One of the arguments that is not to be considered, and the Court is not impressed by the medical issue here. We're not dealing with a medical issue. We're dealing here with one who had been convicted and sentenced, was released, and at the time he was sentenced, there was an argument made to me that I was sentencing a man to death, that he was ill, that he was beyond help, medical help. I sentenced him. I indicated in my opinion what my finding was. People with a background like this present serious threats to society. I commit you to the custody of the Attorney General for two years.
 
 
 20
 * * *
 
 
 21
 I had intended to let this Defendant know how serious this Court believes association with criminals in light of his background in the area of Canton is. The Court drew the inference that more probably than otherwise, there were discussions on illegal activities. I've been told the Government is no longer interested in whatever this man has to say about illegal activities or any discussions.
 
 
 22
 It appeared to me that the sentence that was appropriate under the circumstances would cause this man probably to step back and reflect and decide that he ought to reveal all that took place and happened in those six meetings that he had with these irresponsible people, but that is no longer an issue.
 
 
 23
 The Court is offended by one of this man's stature who just defies the rules and seemingly indicates rules do not pertain to him, but to people like him. This is the reason for the sentence.
 
 
 24
 The court, however, allowed Ferruccio to remain out under supervised release until the appeal was lodged to "permit him an opportunity to continue having doctors look at him and help him if at all possible."
 
 
 25
 Ferruccio argues that his supervised release should not have been revoked because of his age and his general poor health.[7] The sentencing guidelines provide that an extraordinary physical impairment may be a reason to depart below the guideline range (§ 5H1.4), and that a defendant's age may be reason to depart below the guideline range when the defendant is elderly and infirm (§ 5H1.1). Ferruccio's medical reports do not show, however, that he is infirm or that he has an unusual physical impairment. In fact, the Cleveland Clinic found that Ferruccio was in a stable medical condition, and that he merely needed regular follow ups. As stated above, the district court allowed Ferruccio to remain on supervised release pending his appeal in this case so that he may attend the necessary follow ups from his doctors. Under those circumstances, the district court's decision to revoke his supervised release was not fundamentally unfair, nor was it an abuse of discretion. See Hamilton, 708 F.2d at 1414.
 
 
 26
 With respect to the length of his sentence, Ferruccio claims that the district court's "departure" from the guideline range was unjustified because of many mitigating factors. Among the factors are the following: (1) Ferruccio's age; (2) the violation did not involve the commission of a crime; (3) Ferruccio is in declining health; (4) the suggested sentence range under the guidelines was 3-9 months; (5) violation of restrictions based on association should not receive the harshest sentence, because those defendants who engage in hard core criminal activity would not be punished any more severely; and (6) there were no victims of the violation. Also, Ferruccio argues that the sentence was improper because the court based its decision on the perception that Ferruccio refused to cooperate with the government.
 
 
 27
 We must determine whether the district court considered the factors in the guidelines in sentencing the defendant, and whether there are circumstances listed in the guidelines that were not adequately taken into account. Much of Ferruccio's argument on appeal deals not with the court's failure to consider certain factors, but he argues that the court did not give those factors the appropriate weight in arriving at its decision. We will not engage in a reweighing of the pertinent factors; rather, if the appropriate factors were considered by the district court, its decision should be affirmed unless it was plainly unreasonable.
 
 
 28
 We are not convinced that the district court's decision was plainly unreasonable. The district court below relied heavily on the fact that Ferruccio had been a member of LaCosa Nostra, and that persons belonging to such groups are particularly dangerous to society when they choose to associate with other felons. Under 18 U.S.C. § 3553(a)(1), the district court was allowed to take into account Ferruccio's "history and characteristics." Also, as the government pointed out, the contacts with Strollo occurred only shortly after Ferruccio was released from prison, and there was evidence that they were discussing illegal activity. Only after he found out that his meetings had been discovered did he confess his activities to his probation officer. Even then, she testified that Ferruccio blamed his failure to seek permission on the language in the district court's January, 1995 order that was issued months after the meetings. We are not persuaded that the district court erred in the weight given to the pertinent factors in making its ruling. See United States v. Yrlas, No. 94-1702, 1995 WL 311777 (6th Cir. May 19, 1995) (affirming an upward departure to 36 months from a guideline range of 24-30 months because the Chapter 7 guideline range is only a matter of policy and is not binding).
 
 
 29
 Ferruccio calls our attention to U.S.S.G. § 5K1.2, which states that a district court may not consider "[a] defendant's refusal to assist authorities in the investigation of other persons ... as an aggravating factor." The district court stated, however, that the government was no longer interested in his cooperation, and that Ferruccio's noncooperation was "no longer an issue." Therefore, it seems that the district court did not rely on Ferruccio's lack of cooperation in imposing his sentence. Moreover, none of the cases relied upon by Ferruccio in support of his argument involve a district court's departure from the guidelines with respect to a sentence imposed as a result of a supervised release revocation. See United States v. Griess, 971 F.2d 1368 (8th Cir.1992); United States v. Klotz, 943 F.2d 707 (7th Cir.1991); United States v. Edwards, No. 88-4190, 1989 WL 95409 (6th Cir. August 21, 1989); United States v. Stratton, 820 F.2d 562 (2d Cir.1987); United States v. Bradford, 645 F.2d 115 (2d Cir.1981).
 
 
 30
 In sum, it is undisputed that the district court sentenced Ferruccio within the statutory limit of two years. 18 U.S.C. § 3583(e) (two-year maximum for Class C felony). Once a violation was found, the district court was empowered either to revoke supervised release or change its conditions, and to effect a sentence with a maximum limit of two years. Under the circumstances, the court did not abuse its discretion in revoking Ferruccio's supervised release and in imposing the maximum sentence for his violative conduct.
 
 
 31
 Ferruccio's final argument is that the district court erroneously inferred that witnesses that did not testify would be adverse to Ferruccio when such witnesses were equally available to the government. The court stated in a footnote in its August 18, 1995 Order:
 
 
 32
 [T]he defendant did not explain why he could not submit admissible evidence from persons who attended the Meetings. The logical inference is that the attendees were available to testify and would have contradicted the defendant's position.
 
 
 33
 As the government noted, however, the district court's remark was not necessary to its conclusion that Ferruccio associated with Strollo. In any event, there was evidence, through the testimony of agent Mihok, that illegal matters were discussed at the meetings. In sum, we find no reversible error in the sentence imposed.
 
 
 34
 We, accordingly, AFFIRM the decision and order of the district court, without prejudice to defendant's right to seek relief if his physical or mental condition should substantially worsen.
 
 
 
 [1]
 The government argues that Ferruccio is precluded from arguing that he did not violate the condition of his supervised release because he did not raise any such argument to the district court. In fact, there is language in Ferruccio's preargument memorandum to the district court indicating an admission to violating the condition. At oral argument, however, Ferruccio's counsel specifically refused to admit to the legal conclusion that a violation had occurred. In an abundance of caution, we will assume for purposes of this opinion that the arguments now raised by Ferruccio were properly raised in the court below
 
 
 [2]
 Ferruccio raised various other arguments related to the ones specifically mentioned herein. To the extent that those issues are not specifically mentioned in the text of this opinion, we reject them as nonmeritorious
 
 
 [3]
 He does argue that Henry Zottola's conviction is too stale to make Zottola qualify as a "convicted felon" for purposes of determining whether Ferruccio violated the terms of his supervised release. We find it unnecessary to address that argument because Strollo was present at all of the meetings at issue, and association with Strollo alone is sufficient for the court to find that Ferruccio violated the term of his release
 
 
 [4]
 Ferruccio argues that he was given permission by the FBI and the court to associate with Strollo, because the FBI asked him to gather information to use against Strollo. In our view, however, any "permission" given to Ferruccio to carry on his relationship with Strollo is of no consequence in this case, because all of the meetings that were the subject of the supervised release violation took place before any alleged "permission" was given
 
 
 [5]
 Because we find the purpose of Ferruccio's meetings to be immaterial to the issues in this case, we also conclude that it was not an abuse of discretion for the district court to deny Ferruccio's motion to supplement the record with additional documentation related to the purported subject of the meetings
 
 
 [6]
 The district court observed that "[y]ou admit the association, you deny that it's a violation."
 
 
 [7]
 Ferruccio was approximately 79 years old at his sentencing