**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James William MATHENA,
Defendant–Appellant.**

No. 93–8054.

United States Court of Appeals,
Fifth Circuit.

June 6, 1994.

Philip J. Lynch, Asst. Federal Defender, Lucien B. Campbell, Federal Public Defender, San Antonio, TX, for appellant.

Michael R. Hardy, Richard L. Durbin, Jr., Asst. U.S. Attys., James H. DeAtley, U.S. Atty., San Antonio, TX, for appellee.

Before HENDERSON,* SMITH, and EMILIO M. GARZA, Circuit Judges.

* Circuit Judge of the Eleventh Circuit, sitting by designation.

EMILIO M. GARZA, Circuit Judge:

James Mathena appeals the district court's sentence imposed upon revocation of his supervised release. Finding Mathena's sentence neither imposed in violation of law nor plainly unreasonable, we affirm.

I

Mathena was convicted, pursuant to his guilty plea, of one count of distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1), and one count of aiding and abetting the assault of a federal officer with a dangerous weapon in violation of 18 U.S.C. §§ 111, 2. Mathena was sentenced to forty-six months imprisonment and three years of supervised release. In addition to complying with the standard conditions of supervised release,[1] Mathena had to participate in a program approved by the United States Probation Office for substance abuse treatment.

Some time after Mathena had begun serving his term of supervised release, the government filed an amended motion to revoke Mathena's supervised release. The amended motion specifically charged Mathena with (1) operating a motor vehicle while intoxicated; (2) leaving the Western District of Texas without the permission of his probation officer or the district court; and (3) failing to report for substance abuse treatment. At his revocation hearing, Mathena pled true to the charges. The district court therefore granted the motion to revoke based on its finding that Mathena had violated the terms and conditions of his supervised release.

In determining an appropriate term of imprisonment,[2] the district court expressly considered the policy statements of Chapter 7 of the Guidelines.[3] Based on the revocation table set forth in U.S.S.G. § 7B1.4(a), p.s., Mathena's applicable sentencing range was six to twelve months imprisonment.[4] Mathena asked the court to sentence him within this range. Citing Mathena's "contemptuous disregard" for the court's orders, the district court instead sentenced Mathena to the statutory maximum of thirty-six months imprisonment. The court entered a final order reflecting its decision, from which Mathena filed a timely notice of appeal.

II

■■■■■ "We will uphold a sentence unless it (1) was imposed in violation of law, (2) resulted from an incorrect application of the guidelines, (3) was outside the guideline range and is unreasonable, or (4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable." *United States v. Headrick,* 963 F.2d 777, 779 (5th Cir.1992) (citing 18 U.S.C. § 3742(e)). Because there are no applicable guidelines for sentencing after revocation of supervised release, *see* U.S.S.G. Chapter 7 Part A 1. ("At this time, the Commission has chosen to promulgate policy statements only."), we will uphold Mathena's sentence unless it is in violation of law or is plainly unreasonable. *Headrick,* 963 F.2d at 779. In making those determinations, we review the district court's interpretation of statutes de novo. *Id.*

A

■■■■■ Mathena first contends that his sentence was imposed in violation of law

---

1. Those standard conditions required, *inter alia,* that Mathena not commit another federal, state, or local crime, and that he not leave the judicial district without the permission of the court or his probation officer.

2. A court may require a person who has violated a condition of his supervised release "to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision." 18 U.S.C. § 3583(e)(3).

3. *See* United States Sentencing Commission, *Guidelines Manual,* Chapter 7 (Nov. 1992) (enti-

tled "Violations of Probation and Supervised Release").

4. According to U.S.S.G. § 7B1.4(a), p.s., the range of imprisonment applicable upon revocation is determined by plotting a defendant's grade of violation against his criminal history category at the time of his original sentence to a term of supervision. Mathena's DWI conduct equated to a Grade B violation, *see* U.S.S.G. § 7B1.1(a)(2), p.s., and his applicable criminal history category was a II. Those factors yielded a sentencing range of 6–12 months imprisonment based on the table set forth in U.S.S.G. § 7B1.4, p.s.

because the district court failed to sentence him to a term of imprisonment within the applicable range set forth in U.S.S.G. § 7B1.4, p.s.[5] The applicable statutory provision provides:

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), and (a)(6) ... (3) revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision, if it finds by a preponderance of the evidence that the person violated a condition of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure that are applicable to probation revocation and to the provisions of applicable policy statements issued by the Sentencing Commission, except that a person whose term is revoked under this paragraph may not be required to serve more than 3 years in prison if the offense for which the person was convicted was a Class B felony, or more than 2 years in prison if the offense was a Class C or D felony.

18 U.S.C. § 3583(e). Mathena argues that the plain language of that section—i.e., "pursuant to ... the provisions of applicable policy statements issued by the Sentencing Commission"—requires a sentencing court to follow, and not just consider, the policy statements of Chapter 7 of the Guidelines when

imposing a sentence upon revocation of supervised release.

In deciding this question, we must initially determine whether Mathena's argument is foreclosed by our decision in *Headrick*, where we held that the "policy statements [of Chapter 7] are advisory only."[6] *Id.*, 963 F.2d at 780. In that case, Headrick had been convicted of a firearms violation and sentenced to twelve months imprisonment to be followed by three years of supervised release. One of the conditions of Headrick's release was that he refrain from possessing or using any controlled substances. During the course of his supervised release, Headrick repeatedly submitted urine samples that tested positive for cocaine, amphetamine, or methamphetamine. The district court subsequently revoked Headrick's supervised release pursuant to 18 U.S.C. § 3583. *See id.* at 778. In determining an appropriate sentence, the court rejected the imposition of a sentence within the range suggested by the policy statements of Chapter 7 of the Guidelines, and imposed a sentence of twenty-four months imprisonment. *See id.* at 778–79.

On appeal, Headrick argued that his sentence was imposed in violation of law because the statutory phrase "pursuant to ... the provisions of applicable policy statements" required that the district court follow the policy statements of Chapter 7. The government countered that the statute merely re-

---

5. Mathena's counsel below properly preserved this issue. At the revocation hearing, counsel stated:

> Your Honor, we would ask the Court to impose a sentence upon your finding of the violation of revocation of the supervised release and impose a sentence within the [policy statements]. The [policy statements] indicate a sentence of six to twelve months, and it's indicated on the violation worksheet that there are no bases for departure either above or below that. We tend to agree with that and ask the Court to sentence within the [policy statements'] range.

Record on Appeal vol. 3, at 3. By arguing that a sentence outside the policy statements would be an unreasonable "departure," counsel implicitly raised the issue of whether the policy statements are binding, a point challenged by the government in its response. *See id.* ("We would urge that the Court impose a maximum sentence on this Defendant. The guidelines are nonbinding; they are policy statements only.").

6. The overwhelming majority of the circuits have similarly held that the policy statements of Chapter 7 are advisory. *See United States v. Anderson*, 15 F.3d 278, 284 (2d Cir.1994); *United States v. Levi*, 2 F.3d 842, 845 (8th Cir.1993); *United States v. Hooker*, 993 F.2d 898, 900–901 (D.C.Cir. 1993); *United States v. Thompson*, 976 F.2d 1380, 1381 (11th Cir.1992); *United States v. Cohen*, 965 F.2d 58, 61 (6th Cir.1992); *United States v. Lee*, 957 F.2d 770, 774 (10th Cir.1992); *United States v. Corpuz*, 953 F.2d 526, 530 (9th Cir.1992); *United States v. Blackston*, 940 F.2d 877, 893 (3d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 611, 116 L.Ed.2d 634 (1991). *But see United States v. Lewis*, 998 F.2d 497, 499 (7th Cir. 1993) (holding that the policy statements of Chapter 7 are binding). Moreover, no circuit faced with this issue has differentiated between *kinds* of revocations—i.e., those under § 3583(e) as opposed to those under § 3583(g).

quired a sentencing court to *consider* the policy statements. *See id.* at 779. We did not resolve this dispute because we determined that 18 U.S.C. § 3583(g) applied to Headrick's revocation.[7] *See Headrick,* 963 F.2d at 779 ("We find it unnecessary to resolve this dispute and parse the language of § 3583(e)(3), however, because Headrick's case is governed by § 3583(g).").

Mathena contends that *Headrick's* failure to address the "pursuant to" language in § 3583(e) left open the question of whether the policy statements of Chapter 7 are advisory *regarding revocations under that subsection.* We disagree. Our refusal to parse the language of § 3583(e) must be placed in the context of the issues we initially confronted in *Headrick:* (1) whether the defendant's term of supervised release should have been revoked; and (2) whether the defendant should have been sentenced within the range set forth in the policy statements of Chapter 7. That we characterized Headrick's case as being governed by § 3583(g), which *requires* a district court to revoke a defendant's term of supervised release upon finding that the defendant possessed a controlled substance, enabled us to decide the first issue—i.e., "Headrick was *subject to revocation* ... regardless of how we might interpret § 3583(e)(3)." *Headrick,* 963 F.2d at 780 (emphasis added); *see also* 18 U.S.C. § 3583(e)(3) (providing that a court *may* revoke a term of supervised release). For the purpose of determining the second issue—i.e., whether the policy statements of Chapter 7 bind courts when *imposing a revocation sentence*—we did not distinguish § 3583(e) from § 3583(g). *See Headrick,* 963 F.2d at 780 ("[T]hat the district court revoked Headrick's supervised release pursuant to § 3583(g) rather than § 3583(e)(3) does not obviate our need to decide the extent to which the policy statements of Chapter 7 of the *Guidelines Manual* bind sentencing courts."). Furthermore, in reaching our conclusion that Congress intended the policy

statements of Chapter 7 to be advisory only, we relied on 28 U.S.C. § 994(a)(3), which gave the Sentencing Commission the choice to issue "guidelines *or* general policy statements regarding the appropriate use of ... the provisions for modification of the term or conditions of supervised release set forth in *section 3583(e) of title 18.*" *See* 18 U.S.C. § 994(a)(3) (emphasis added). We therefore did not distinguish § 3583(e) from § 3583(g) when deciding that the policy statements of Chapter 7 are advisory only. Consequently, our broadly-stated holding—i.e., "district courts must consider the policy statements contained in Chapter 7 of the Guidelines when sentencing a defendant upon revoking his supervised release, but that these policy statements are advisory only"—encompassed revocations under both § 3583(e) and § 3583(g). That we came to this conclusion without parsing the language of § 3583(e)(3) suggests at most that we may wish to reconsider en banc our holding in *Headrick.*[8] The essential fact remains, however, that if we were to accept Mathena's argument on appeal we would be forced to overrule *Headrick,* in contravention of our prior panel rule. *See Pruitt v. Levi Strauss & Co.,* 932 F.2d 458, 465 (5th Cir.1991) ("In this Circuit one panel may not overrule the decision, right or wrong, of a prior panel in the absence of en banc consideration or superseding decision.").

■ Even assuming *arguendo* that Mathena's argument on appeal is still viable after *Headrick,* we disagree with Mathena's interpretation of § 3583(e). "The starting point in every case involving construction of a statute is the language itself." *Greyhound Corp. v. Mt. Hood Stages, Inc.,* 437 U.S. 322, 330, 98 S.Ct. 2370, 2375, 57 L.Ed.2d 239 (1978) (attributions omitted). "If the intent of Congress is clear, that is the end of the matter; for the court ... must give effect to the unambiguously expressed intent of Congress." *Chevron, U.S.A. Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694

---

7. Section 3583(g) provides that "[i]f the defendant is found by the court to be in the possession of a controlled substance, the court shall terminate the term of supervised release and require the defendant to serve in prison not less than one-third of the term of supervised release."

8. For the reasons set forth later in this opinion, we do not believe en banc review is warranted.

(1984). In determining the clear or plain meaning of a statute, "we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy." *Crandon v. United States,* 494 U.S. 152, 158, 110 S.Ct. 997, 1001, 108 L.Ed.2d 132 (1990); *see also King v. St. Vincent's Hosp.,* —— U.S. ——, ——, 112 S.Ct. 570, 574, 116 L.Ed.2d 578 (1991) ("[A] statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context."); *Sutton v. United States,* 819 F.2d 1289, 1293 (5th Cir.1987) ("Specific words within a statute ... may not be read in isolation of the remainder of that section or the entire statutory scheme.").

We are not convinced that the plain language of § 3583(e), read in the context of the entire statute, states that a court must impose a revocation sentence pursuant to the policy statements of Chapter 7. Mathena's interpretation of § 3583(e) assumes that the phrase "pursuant to ... the provisions of applicable policy statements" modifies the phrase "require the person to serve in prison all or part of the term of supervised release." *See* 18 U.S.C. § 3583(e)(3) ("The court may ... revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release, ... pursuant to the provisions of applicable policy statements issued by the Sentencing Commission...."). The wording of the statute is unclear as to whether the phrase "pursuant to ... applicable policy statements" refers to a court's power to revoke supervised release or to a court's power to impose a revocation sentence. *Cf.* 18 U.S.C. § 3583(e) (entitled "Modification of Conditions or Revocation," rather than "Sentencing After Revocation").

■ Mathena's interpretation of the plain language of § 3583(e) is also unconvincing because it fails to consider the phrase "pursuant to ... the applicable policy statements" in the context of the underlying statutory scheme. The "applicable policy statements" referred to in § 3583(e) and set forth in Chapter 7 of the Guidelines, were promul-

gated by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(3). According to that section, Congress specifically directed the Sentencing Commission to promulgate "guidelines *or* policy statements regarding the appropriate use of ... the provisions for ... revocation of supervised release set forth in section 3583(e)." As we indicated in *Headrick,* Congress treats policy statements and guidelines differently, such that while guidelines are normally considered binding, policy statements are usually advisory. *See id.,* 963 F.2d at 780. That Congress gave the Sentencing Commission the choice to issue guidelines or policy statements evidences Congress' intent that the policy statements regarding the revocation of supervised release be advisory only.[9] *See id.* at 781–82. That the Sentencing Commission itself termed the provisions of Chapter 7 "advisory policy statements" which would provide "greater flexibility to both the Commission and the courts," bolsters the view that the policy statements of Chapter 7 were intended to be advisory only. *Id.* at 781 (citing U.S.S.G. Ch. 7, Pt. A3(a)). Mathena fails to cite, and we cannot find, any support for the proposition that Congress intended to change the advisory nature of the policy statements of Chapter 7 by its inclusion of the lone phrase "pursuant to" in § 3583(e). Indeed, this interpretation is at odds with the introduction of § 3583(e), which directs courts to *consider* certain factors when revoking supervised release and imposing sentence, including any pertinent policy statement. *See* 18 U.S.C. § 3583(e) (citing 18 U.S.C. § 3553(a)(5)).

We further note that if we were to accept Mathena's interpretation, then the policy statements of Chapter 7 would be non-binding when sentencing a defendant under § 3583(g), but would be binding when sentencing a defendant under § 3583(e), even though the conduct underlying the application of § 3583(g)—i.e., the possession of a controlled substance—can constitute a violation of a term of supervised release under § 3583(e). *See, e.g., Headrick,* 963 F.2d at

---

**9.** We think it clear that if Congress had intended to make the provisions regarding the revocation of supervised release binding, then it would have simply directed the Sentencing Commission to promulgate guidelines, rather than give the Commission a choice between guidelines or policy statements.

778–79. Our interpretation of § 3583(e) avoids this absurd result.[10] *See In re Chapman,* 166 U.S. 661, 667, 17 S.Ct. 677, 680, 41 L.Ed. 1154 (1897) ("[N]othing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion...."); *Kelly v. United States,* 924 F.2d 355, 361 (1st Cir.1991) ("It has been called a golden rule of statutory interpretation that unreasonableness of the result produced by one among alternative possible interpretations of a statute is reason for rejecting that interpretation in favor of another which would produce a reasonable result." (quoting 2A Sands, Sutherland Stat. Const. § 45.12 at 54 (4th ed. 1984–85)). Consequently, we interpret the statutory phrase "pursuant ... to the provisions of applicable policy statements" to mean that courts need only consider the policy statements of Chapter 7. We therefore hold that when a court sentences a defendant upon revoking his supervised release under § 3583(e), the policy statements of Chapter 7 are advisory only.

The Supreme Court's recent opinion in *Stinson v. United States,* — U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), has no bearing on this case. In *Stinson,* the Court stated that "[t]he principle that the Guidelines Manual is binding on federal courts applies as well to policy statements." *Id.,* —— U.S. at ——, 113 S.Ct. at 1917 (citing *Williams v. United States,* — U.S. ——, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992)).[11] The Supreme Court's dictum is clearly distin-guishable.[12] In *Stinson,* the Court drew an analogy between commentary that interprets or explains a guideline, and an agency's interpretation of its own legislative rules. Because courts usually give controlling weight to an agency's interpretation of its own legislative rules, the Court reasoned the same treatment should be accorded commentary that explains or interprets a guideline. The Court's rationale for its holding (regarding commentary) and dictum (regarding policy statements) does not apply here because the policy statements of Chapter 7 do not interpret or explain a guideline. As we stated in *Headrick,* the policy statements of Chapter 7 "stand alone, and in a state of nascency." *Id.,* 963 F.2d at 782. Consequently, *Stinson* is clearly distinguishable. *See Anderson,* 15 F.3d at 284 n. 6 (determining that *Stinson* is distinguishable from the policy statements of Chapter 7); *Levi,* 2 F.3d at 845 (same); *cf. Headrick,* 963 F.2d at 782 (distinguishing *Williams* (which *Stinson* cited as support) because the policy statements of Chapter 7 "do not interpret or explain any statute or guideline"). *But see Lewis,* 998 F.2d at 499 (holding that *Stinson* compels the conclusion that all policy statements, including those of Chapter 7, are binding).

## B

We also reject Mathena's contention that his sentence of thirty-six months imprisonment was plainly unreasonable.[13] While a final hearing on the government's motion to revoke Mathena's sentence re-

10. No court has distinguished § 3583(e) from § 3583(g) when determining a maximum revocation sentence under § 7B1.4(a), p.s.

11. In *Williams,* the Supreme Court held that "[w]here ... a policy statement prohibits a district court from taking a specified action, the statement is an authoritative guide to *the meaning of the applicable guideline.*" *Id.,* —— U.S. at ——, 112 S.Ct. at 1119 (emphasis added).

12. Because the issue before the Court was whether *commentary* to the Guidelines was binding on sentencing courts, we regard the Court's statement regarding the binding nature of policy statements to be dictum.

13. Because we hold that the policy statements of Chapter 7 are advisory only, we reject Mathena's contention that the district court had to give notice of its "departure." A sentence which diverges from advisory policy statements is not a departure such that a court has to provide notice or make specific findings normally associated with departures under § 3553(b). *See United States v. Jones,* 973 F.2d 605, 608 (8th Cir.1992) ("The court is not required by § 3583 to consider anything under § 3553(b)."); *Blackston,* 940 F.2d at 893 ("When working with policy statements (as opposed to guidelines), the district court is not required to impose a sentence outside of the prescribed range (in this case two years) by finding an aggravating factor that warrants an upward departure under 18 U.S.C. § 3553(b).").

mained pending,[14] Mathena repeatedly and willfully violated other conditions of his supervised release by leaving the Western District of Texas without permission and failing to report for substance abuse treatment. *See United States v. Brooks,* 976 F.2d 1358, 1361 (10th Cir.1992) (determining that a defendant's revocation sentence was reasonable where the defendant repeatedly violated the terms of his supervised release after the district court had deferred revocation), *cert. denied,* —— U.S. ——, 113 S.Ct. 2352, 124 L.Ed.2d 260 (1993). Moreover, the thirty-six month term of imprisonment imposed by the district court was within the statutory maximum. *See* 18 U.S.C. § 3583(e)(3) ("[A] person whose term is revoked under this paragraph may not be required to serve more than 3 years in prison if the offense for which the person was convicted was a Class B felony...."). Under these circumstances, we cannot conclude that Mathena's sentence was plainly unreasonable.

## III

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.

---

**14.** The government's original motion to revoke supervised release was based on Mathena's DWI conduct, in violation of the standard condition that he honor state law.