**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

————————————

No. 98-50932

————————————

UNITED STATES OF AMERICA,

                     Plaintiff-Appellee,

      VERSUS

    JOSEPH GLEN HAREN,

                  Defendant-Appellant.

——————————————————

Appeal from the United States District Court
for the Western District of Texas
(SA-98-CR-194-ALL)

——————————————————

July 8, 1999

Before KING, Chief Judge, SMITH and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

Joseph Haren appeals the sentence he received for violation of the terms of his supervised release. He asserts that the district court erred by (1) failing to provide adequate notice that his past performance on supervised release was a factor in his sentencing and (2) increasing his sentence based on unsupported findings of past non-compliance with his supervised release. Finding no reversible error, we affirm.

I.

Haren pleaded guilty to conspiracy to possess an unregistered firearm and was fined $50 and sentenced to twenty-

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

seven months' imprisonment and three years' supervised release. On April 14, 1998, while on supervised release, he was arrested and charged with driving while intoxicated ("DWI"). The government originally moved to modify the terms of his supervised release to request that he receive treatment for alcoholism and reside in a halfway house. At the modification hearing, however, the government announced that instead it would seek revocation of supervised release on the ground that Haren's alcohol problem posed a risk to the community.[1] The government then formally moved for revocation, asserting that Haren's DWI conduct violated three conditions of his supervised release: (1) that he not commit a crime; (2) that he not con-sume alcohol excessively; and (3) that he not violate the instructions of his probation officer. The government explained that in light of Haren's alcohol problem, he would receive more effective treatment if he were revoked and sentenced to a federal term in a facility that offered in-house alcohol treatment. It asked the court to revoke Haren's supervised release and imprison him for no more than twenty-four months.

In a follow-up re-sentencing memorandum, the government elaborated on its revocation motion and recommended that Haren be sentenced to no less than eighteen months' imprisonment after credit for time served. The government recognized that the

---

[1] Haren had two previous DWI convictions from before his period of supervised release.

policy statement recommended 5-11 months for cases like Haren's.[2] Because of Haren's history of misconduct, however, the government argued that an above-range punishment was needed to protect the public from Haren's "high risk of felonious conduct". *See* U.S.S.G. § 7B1.4, comment. n.3.

At the revocation hearing, Haren pleaded true to the violations alleged. The probation officer confirmed that Haren had committed a grade C violation and that his criminal history category was III, leading to a recommended sentencing range of 5-11 months. The government then reiterated its request that Haren serve at least 18 months so that he could fully participate in an alcohol recovery program. Because Haren had already been in custody for five months, the government asked for 23 months to ensure a full 18-month term. Haren requested a sentence of five months' time served and said that the state prosecutor had offered a suspended, probated sentence on the state DWI charge.[3]

The court revoked Haren's supervised release term and sentenced him to twenty-three months. In a subsequent written explanation, the court stated that it "has imposed a sentence near the statutory maximum imprisonment term based upon the defendant's extensive history of non-compliance while on supervised release."

---

[2] Haren's violation was classified as a Grade C violation with a criminal history category of III. *See* U.S.S.G. § 7B1.4(a), p.s. (revocation table).

[3] Conditions of the state probation were to include alcohol education classes and twice-weekly Alcoholics Anonymous meetings.

II.

We "will uphold a sentence unless it (1) was imposed in violation of law, (2) resulted from an incorrect application of the guidelines, (3) was outside the guideline range and is unreasonable, or (4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable." *United States v. Mathena*, 23 F.3d 87, 89 (5th Cir. 1994). "Because there is no applicable guideline for sentencing after revocation of supervised release, we will uphold Appellant's sentence unless it is in violation of law or is plainly unreasonable."[4] We review questions of constitutional violations and statutory interpretation, however, *de novo*.[5]

III.

Haren makes two challenges to his revocation and sentence. First, he asserts that his rights to due process at his revocation hearing were violated because he had no notice of the grounds for the sentence. Second, he avers that the record does not support the sentence.

A.

Haren first argues that the court did not give him notice that his DWI charges incurred before supervised release would be used to impose a sentence higher than the one recommended on the

---

[4] *United States v. Giddings*, 37 F.3d 1091, 1093 (5th Cir. 1994) (citing *United States v. Headrick*, 963 F.2d 777, 779 (5th Cir. 1992)).

[5] *See*, *e.g.*, *United States v. Webster*, 162 F.3d 308, 333 (5th Cir. 1998) (reviewing constitutional claims de novo), *petition for cert. filed* (Apr. 29, 1999) (No. 98-9212); *United States v. Myers*, 150 F.3d 459, 461 (5th Cir. 1998) (reviewing FED. R. CRIM. P. 32 claims *de novo*).

4

revocation table.  He asserts that neither the government's revocation motion nor its sentencing memorandum asserted that his past performance on conditional release warranted a sentence above the recommended range.  Moreover, his DWI charges were not raised at the revocation hearing.  According to Haren, he did not learn that his pre-supervised release history had been a factor in his sentence until the  court issued its post-sentencing written order.  Haren claims that the failure to provide him with the opportunity to address an issue determinative of his sentence violated his right to due process.[6]      Haren is correct that persons on supervised release have procedural due process rights in the context of revocation hearings.  *See United States v. Ayers*, 946 F.2d 1127, 1129 (5th Cir. 1991).  Though the Supreme Court has emphasized that more flexibility is permitted in revocation hearings, due process still requires that a defendant facing revocation be given (1) written notice of the alleged violation; (2) disclosure of the evidence against him; (3) an opportunity to appear and present evidence; (4) an opportunity to question adverse witnesses; and (5) notice of the right to be represented by counsel.  *See Morrissey v. Brewer*, 408 U.S. 471, 488-89 (1972); FED. R. CRIM. P. 32.1(a)(2).

Haren concedes that he received due process in the form of a written notice of revocation proceedings and a full-scale

---

[6] Haren did not object to the district court's reliance on his non-compliance during his supervised release.  We will not review for plain error, however, because the court did not reveal the basis for its decision until after the revocation hearing.  Therefore, Haren could not have objected at the revocation hearing to preserve the issue for appeal.

5

revocation hearing accompanied by legal counsel. He maintains, however, that the court deprived him of any effective ability to comment on the factors used to impose sentence because it failed to give him notice that his prior DWI charges would be a factor in his sentencing. This lack of notice, Haren claims, violates due process. "'Th[e] right to be heard has little reality or worth unless one is informed' that a decision is contemplated." *Burns v. United States*, 501 U.S. 129, 136 (1991) (quoting *Mullane v. Central Hanover Bank*, 339 U.S. 306, 314 (1950)).

In *Burns,* the Court held that rule 32 requires a court to give defendants notice before departing upward on a ground not identified in the pre-sentencing materials. Though he raises his due process claim in the context of a revocation hearing rather than a sentencing hearing, Haren claims that the reasoning in *Burns* applies equally to his case: A court may not *sua sponte* increase a sentence without giving notice of the grounds for such an increase. To do otherwise, the Court explained, would raise due process concerns. See id. at 138.

*Burns* is not directly applicable, however, because the court in that case departed upward from the range set by the Sentencing Guidelines. See id. at 135. Here, the court imposed a sentence within the statutory maximum but in excess of the sentence recommended by the policy statements accompanying Chapter 7 of the guidelines. *See* U.S.S.G. § 7B1.4(a), p.s. (revocation table). We have consistently held that unlike the ranges prescribed by the Guidelines, these policy statements are

6

advisory only and do not bind sentencing courts at a revocation hearing. [7]

Therefore, *Burns* is inapposite. While rule 32 and due process concerns require that a defendant receive the opportunity to comment on the factors used to depart from pre-sentencing recommendations based on the guidelines, the same stringent standards do not apply to departures from non-binding, advisory policy statements. "[T]he sentencing court is not required to give notice of its intent to exceed the Chapter 7 sentencing range." *United States v. Hofierka*, 83 F.3d 357, 362 (11th Cir. 1996). "Thus, any recommendation of sentences before the district court or argument against a particular sentence should be grounded in the common understanding that the district court may impose any sentence within the statutory maximum." *Id.*

Because a court is not required to give notice of its intent to depart from policy statements, there is no basis to require it to give notice of *why* it is departing from them. Haren received sufficient notice that he could have been required to serve up to the statutory maximum allowed by the statute[8] when the government filed its original revocation motion.[9] This notice of the

---

[7] *See Mathena*, 23 F.3d at 93. *Accord United States v. Blackston*, 940 F.2d 877, 894 (3d Cir. 1991) ("When working with policy statements (as opposed to guidelines), the district court is not required, in considering revocation for supervised release, to justify its decision to impose a sentence outside the prescribed range. . . .").

[8] 18 U.S.C. § 3583(e)(3).

[9] "THE COURT: [D]o you understand that if you plead true, the Court may impose supervised release term that'll beSSthat is that'll be mandatory grounds for revocation and the maximum punishment will be imposed upon revocation, do you understand this?    DEFENDANT HAREN: Yes, I do, Your

possibility of a two-year term satisfies the due process concerns that Haren could raise under *Burns*.  Therefore, Haren has no due process right to notice of all possible factors used to depart from a Chapter 7 policy statement.[10]

### B.

Haren asserts an alternative ground for vacating his sentence: The district court's finding that Haren had previously violated the terms of his supervised release has no support in the record.  The record does not contain any evidence that Haren violated his supervised release condition in any way before the DWI arrest that sparked his revocation proceeding.  Because there is no support in the record for the finding, Haren argues, the sentence is "plainly unreasonable."  *See Mathena*, 23 F.3d at 89.

We agree that the court erred in basing its sentence on Haren's "extensive history of non-compliance while on supervised release."  The government's pre-sentencing memorandum based its recommendations on Haren's behavior before his most recent supervised release term, and there is nothing in the record

---

Honor."

[10] The government points out that even if Haren had a due process right to be notified of the factors used to depart from the policy statements, he received adequate notice that the prior DWI's would be considered in sentencing.  Specifically, the re-sentencing memorandum, filed two months before the revocation hearing, recommended 18 months' incarceration in addition to time served.  At the revocation hearing, the government stated its concerns about the prior DWI's. ("MR. MATHEWS: The issue, we feel is . . . Mr. Haren's repeated use of alcohol over the years and repeated violations of driving while intoxicated.").

Haren had ample time to respond to the government's concerns and recommendations before the final ruling.  Because Haren has no due process right to know the factors for a chapter 7 policy statement departure, we do not reach the question whether any such rights were violated.

indicating Haren had previously violated his current release term.

This error, however, does not necessarily require us to find that the sentence was "plainly unreasonable." We have upheld rulings if the record provides a valid reason to do so.[11]

In its re-sentencing memorandum, the government asserted that Haren's persistent DWI misconduct before his current supervised release term created a "high risk of new felonious conduct" and that a twenty-three-month sentence was needed so that Haren could undergo the rigorous substance abuse program provided by the Bureau of Prisons. Even though it did not rely on the government's reasoning, the court accepted the government's sentencing recommendation. The resulting twenty-three-month term was within the statutory maximum.[12] Considering that the government offered good reasons for seeking the sentence and that the court did not exceed its statutory authority, we cannot say the sentence was plainly unreasonable. *See Mathena*, 23 F.3d at 94.

AFFIRMED.

---

[11] *See*, *e.g.*, *United States v. Diaz,* 39 F.3d 568, 571-72 (5th Cir. 1994) (holding that decision not to grant reduction for acceptance of responsibility would be upheld even though based in part on irrelevant grounds, because decision was independently supported by other factors); *United States v. Tello*, 9 F.3d 1119, 1128 (5th Cir. 1993) ("We may always affirm a district court's ruling, made for an invalid reason, if we are shown or can find a valid reason to support the ruling.").

[12] *See* 18 U.S.C. § 3583(e)(3) ("[A] defendant whose term is revoked under this paragraph may not be required to serve more than . . . 2 years in prison if such offense is a Class C or D felony . . . .").

KING, Chief Judge, specially concurring:

This is a case in which the district court simply misspoke when it added the words "while on supervised release" to its explanation of the reasons for revoking the defendant's supervised release. A fair reading of the record makes it perfectly clear that the defendant had plenty of notice of the reasons why the government sought revocation rather than modification and why his sentence on revocation should be no less than 18 months federal imprisonment after credit for time served. At the revocation hearing on September 3, the defendant pleaded true to the violations alleged. The government focused on the defendant's repeated alcohol-related violations and asked again that the defendant be imprisoned for at least 18 months to allow him to participate in a Bureau of Prisons alcohol treatment program. The court did exactly that, and its written revocation order contained a recommendation that the defendant participate in an alcohol treatment program while incarcerated. The order further stated that "[t]he Court has imposed a sentence near the statutory maximum imprisonment term based upon the defendant's extensive history of non-compliance while on supervised release." The defendant's extensive history of noncompliance with state criminal laws about driving under the influence was clear. The fact that only one of his DWI's occurred while he was on supervised release was absolutely clear to the court and to all the participants. The court simply misspoke in its order. Rather than seeking clarification or modification if, indeed,

10

there was any need for that, the defendant's counsel filed a notice of appeal. I respect the defendant's counsel and I have some sympathy for the situation he may have found himself in. But a simple misstatement in an otherwise flawless proceeding has generated what seems to me to be a needless appeal, which, in turn, may have lent support to the defendant's denial of his alcohol problem. The defendant's denial of his alcohol problem was the central issue that the proceeding sought to address.

I concur in the judgment.