**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Harold DAVIS, Defendant–Appellant.**

**No. 94–5474.**

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 2, 1995.

Decided May 8, 1995.

**ARGUED:** C. Cooper Fulton, Asst. Federal Public Defender, Charleston, WV, for appellant. Michael Lee Keller, Asst. U.S. Atty., Charleston, WV, for appellee. **ON BRIEF:** Hunt L. Charach, Federal Public Defender, Charleston, WV, for appellant.

Rebecca A. Betts, U.S. Atty., Charleston, WV, for appellee.

Before HALL and LUTTIG, Circuit Judges, and ELLIS, United States District Judge for the Eastern District of Virginia, sitting by designation.

Affirmed by published opinion. Judge ELLIS wrote the opinion, in which Judge HALL and Judge LUTTIG joined.

## OPINION

ELLIS, District Judge:

In this appeal, we are presented with the question whether, prior to certain 1994 statutory amendments, Chapter 7 of the United States Sentencing Guidelines was binding on a district court in a supervised release revocation hearing.[1]

### I.

Davis pled guilty in July 1991 to an information charging him with cocaine distribution in violation of 21 U.S.C. § 846. At sentencing, in September 1991, the district court granted Davis a downward departure on the ground of aberrant behavior and then sentenced him to five years of supervised probation. Davis' probation did not last long. Within a month, he was arrested after being seen on a college campus carrying a machine gun. The probation violation led to a revocation of probation and a twenty-one month sentence of imprisonment followed by a five year term of supervised release.

After serving his sentence of imprisonment, defendant moved from West Virginia to Memphis, Tennessee and began serving his supervised release term. He was no

more successful in this venture than he had been with respect to his earlier probation. Within a short period of time he was charged with shoplifting and murder. The murder charge was dismissed, but he was convicted of shoplifting and sentenced to time served, which amounted to thirty-four days in jail. Defendant then left Tennessee and returned to West Virginia.

Thereafter, an incident occurred in May 1994 that led to the revocation of defendant's supervised release and the related sentencing reviewed here. Specifically, on May 3, 1994, a police officer responding to a disturbance call at a convenience market found defendant in a state of extreme agitation, shouting and threatening to kill the police officer. In the course of this incident, defendant removed his shirt, threw a 13" long, thick-bladed butcher's knife on the ground and challenged the police officer to "Come and get me." Ultimately, the police officer succeeded in subduing defendant and taking him into custody where he remained until his hearing on a petition to revoke his supervised release.[2] This petition, as amended, charged defendant with violating the terms of his supervised release by committing three offenses, the January 1994 shoplifting conviction, the May 3, 1994 arrest for threatening a police officer and carrying a dangerous weapon, and a December 1993 controlled substance possession offense resulting from a urine test that was positive for marijuana.

In the course of the hearings on the amended petition,[3] defendant admitted two violations: the state shoplifting conviction and the controlled substance possession violation inferred from the positive urine test. Prior to adjudicating the petition, the district court reduced defendant's supervised release

---

**1.** The relevant statutory provisions, 18 U.S.C. §§ 3553, 3565, 3583, were each amended by the Violent Crime Control & Law Enforcement Act of 1994, Pub.L. No. 103–322, 108 Stat. 1796 (Sept. 13, 1994). Where we cite the pre-amendment version of a statute in this opinion, we note so parenthetically.

The question presented here is easily answered for cases to which the 1994 amendments apply because § 110505 of the 1994 law amends 18 U.S.C. § 3583(e)(3) and removes the statutory language on which Davis principally relies. *See infra* note 11 and accompanying text. The stat-

utes now provide, in both supervised release revocation and probation revocation cases, that district courts are required merely to "consider" the Chapter 7 policy statements. *See* 18 U.S.C. §§ 3553(a)(4)(B), 3565(a), 3583(e) (current version).

**2.** During this period of custody, Davis was admitted to Huntington State Hospital and treated for mental illness.

**3.** Two hearings were held, one on May 31, 1994 and a second on June 20, 1994.

term to three years based on our decision in *United States v. Good,* 25 F.3d 218 (4th Cir.1994). Thereafter, the district court declined the government's offer to withdraw the allegation of threatening a police officer and proceeded instead to hear evidence concerning this charge. Following this, the district court revoked defendant's supervised release. The district court concluded that the proper imprisonment range was one to two years based on the minimum then provided by 18 U.S.C. § 3583(g) and the maximum provided by 18 U.S.C. § 3583(e)(3).[4] In reaching this result, the district court rejected defendant's argument that the Sentencing Guidelines Chapter 7 policy statements limited punishment to the one year mandatory sentence. *See* U.S.S.G. § 7B1.4(a), (b)(2). The district court concluded that a two year sentence was called for given defendant's danger to the community and to himself.[5] Defendant appeals from this sentence.

## II.

The Sentencing Guidelines policy statements applicable to violations of probation and supervised release include a table of sentencing ranges. *See* U.S.S.G. § 7B1.4(a). Under this table, Davis' sentencing range was three to nine months, since he committed a Grade C violation and was in Criminal History Category I. Davis concedes that a sentence within this range was inappropriate because a range of one to two years imprisonment was required by statute. *See supra*

note 4. Yet, the Chapter 7 policy statement also provides that where the statutory minimum sentence exceeds the top of the applicable range, "the minimum term of imprisonment required by statute shall be substituted for the applicable range." U.S.S.G. § 7B1.4(b)(2). In other words, because the one-year statutory minimum was greater than nine months, the Chapter 7 policy statement called for the imposition of a one-year sentence. Davis' complaint is that the district court did not follow the Chapter 7 policy statement, and instead imposed the maximum sentence permitted by the statute, namely two years.

Davis' argument fails for the simple reason that the Chapter 7 policy statements on which he relies are not binding on the courts. They provide helpful assistance to courts in sentencing, but are not mandatory.[6] We so held in *United States v. Denard,* 24 F.3d 599, 602 & n. * (4th Cir.1994), where, as Davis correctly notes, the context was a probation revocation, rather than, as here, a revocation of supervised release. This distinction is not material, for there is no reason in policy or principle to distinguish between probation revocation and supervised release revocation in determining the mandatory or advisory nature of Chapter 7 policy statements.[7] Thus, we join all the circuits that have previously considered this issue in holding that Chapter 7 policy statements, prior to the 1994 amendments,[8] were not binding in

---

4. The minimum sentence was "one-third of the term of supervised release," that is, one-third of three years. 18 U.S.C. § 3583(g) (before 1994 amendment). The maximum sentence was two years because Davis was on supervised release following conviction of a Class C felony. 18 U.S.C. § 3583(e)(3).

5. In the words of the district court, it was necessary to "incapacitate Mr. Davis for as much time as I can incapacitate him so that he can receive appropriate medical and psychiatric treatment."

6. Some policy statements *are* binding on the district courts, but we concluded that U.S.S.G. § 7B1.4 is not one of them. *United States v. Denard,* 24 F.3d 599, 602 & n.* (4th Cir.1994). The Supreme Court has held that a Guidelines policy statement or commentary may be binding, but only if it "interprets or explains a guideline." *Stinson v. United States,* —— U.S. ——, ——, 113

S.Ct. 1913, 1915, 123 L.Ed.2d 598 (1993); *see also Williams v. United States,* 503 U.S. 193, 199, 112 S.Ct. 1112, 1119, 117 L.Ed.2d 341 (1992) (plurality opinion). Chapter 7, unlike the chapters at issue in *Stinson* and *Williams,* contains no guidelines, and therefore a Chapter 7 policy statement cannot be an authoritative interpretation within the meaning of those cases.

7. This point is implicitly recognized in *Denard,* which relies in part on the Third Circuit's decision in a supervised release case. 24 F.3d at 602 (citing *Blackston,* 940 F.2d at 893). Further support for this point is that the relevant policy statement, U.S.S.G. § 7B1.4, draws no distinction between probation and supervised release.

8. *See supra* note 1.

supervised release revocation proceedings [9] or probation revocation proceedings.[10]

Davis attempts to distinguish *Denard* by pointing to differences in the statutes that governed probation revocation and supervised release revocation at the time of his sentencing. The statute then in effect provided that in finding a violation and revoking supervised release, the district court must act "pursuant to ... the provisions of applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3583(e)(3) (before 1994 amendment).[11] In Davis' view, this language made clear that Chapter 7 policy statements were binding on district courts in supervised release cases.[12] This view is ultimately unpersuasive; it places too much weight on ambiguous language. While the ambiguity permits Davis' argument, it does not compel it. On the contrary, given that the statute does not expressly address or alter the advisory or mandatory nature of the policy statements, the phrase is more sensibly read to mean that district courts should act "pursuant to" applicable policy statements by applying those which are mandatory and by considering those which are merely advisory.[13]

This conclusion finds further support from the fact that Davis' interpretation, while tex-

**9.** For cases holding that Chapter 7 policy statements are non-binding in supervised release revocation proceedings, see *United States v. Hill*, 48 F.3d 228 (7th Cir. 1995), *overruling United States v. Lewis*, 998 F.2d 497, 498–99 (7th Cir.1993); *United States v. Mathena*, 23 F.3d 87, 91–93 (5th Cir.1994); *United States v. Sparks*, 19 F.3d 1099, 1101 & n. 3 (6th Cir.1994); *United States v. Anderson*, 15 F.3d 278, 283–84 (2d Cir.1994); *United States v. O'Neil*, 11 F.3d 292, 301 n. 11 (1st Cir.1993); *United States v. Levi*, 2 F.3d 842, 845 (8th Cir.1993); *United States v. Thompson*, 976 F.2d 1380, 1381 (11th Cir.1992); *United States v. Bermudez*, 974 F.2d 12, 13–14 (2d Cir. 1992); *United States v. Jones*, 973 F.2d 605, 608 (8th Cir.1992); *United States v. Cohen*, 965 F.2d 58, 60–61 (6th Cir.1992); *United States v. Headrick*, 963 F.2d 777, 780 (5th Cir.1992); *United States v. Lee*, 957 F.2d 770, 773 (10th Cir.1992); *United States v. Blackston*, 940 F.2d 877, 893 (3d Cir.), *cert. denied*, 502 U.S. 992, 112 S.Ct. 611, 116 L.Ed.2d 634 (1991); *United States v. Oliver*, 931 F.2d 463, 465 (8th Cir.1991).

**10.** For cases holding that Chapter 7 policy statements are non-binding in probation revocation proceedings, see *United States v. Forrester*, 19 F.3d 482, 484 (9th Cir.1994); *United States v. Hooker*, 993 F.2d 898, 900–01 (D.C.Cir.1993); *United States v. Corpuz*, 953 F.2d 526, 530 (9th Cir.1992).

**11.** Prior to the 1994 amendments, the statute provided, in pertinent part, that the district court may:

revoke a term of supervised release, and require the person to serve in prison all or part of the term of supervised release without credit for time previously served on postrelease supervision, if it finds by a preponderance of the evidence that the person violated a condition of supervised release, *pursuant to* the provisions of the Federal Rules of Criminal Procedure that are applicable to probation revocation and *to the provisions of applicable policy statements issued by the Sentencing Commission* ....

18 U.S.C. § 3583(e)(3) (emphasis added) (before 1994 amendment). Although neither party

discusses it, we note that the supervised release revocation statute at issue here contained a second reference to Guidelines policy statements. *See* 18 U.S.C. §§ 3583(e), 3553(a)(5) (district court may modify supervised release only after "considering" various factors including "pertinent policy statements" issued pursuant to 28 U.S.C. § 994(a)(2)) (before 1994 amendments). This provision related only to policy statements issued pursuant to 28 U.S.C. § 994(a)(2), and therefore did not relate to the Chapter 7 policy statements. *See infra* note 12.

**12.** In responding to Davis' textual argument, the government incorrectly asserts that the probation revocation statute at issue in *Denard* also contained a provision directing the district courts' attention to the Chapter 7 policy statements. In fact, under the statute then in effect, the district court was permitted to revoke probation and impose sentence only after "considering the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3565(a). Section 3553(a) then included an admonition to district courts to consider "any pertinent policy statement issued by the Sentencing Commission *pursuant to 28 U.S.C. 994(a)(2).*" 18 U.S.C. § 3553(a)(5) (emphasis added) (before 1994 amendment). Yet, the Chapter 7 policy statements are issued under § 994(a)(3), not (a)(2). Thus, at the time of Davis' sentencing, the supervised release revocation statute, but not the probation revocation statute, explicitly referred to the Chapter 7 policy statements. Even so, the government's essential argument is still correct, for this textual distinction does not justify the conclusion Davis advocates.

**13.** We note also that it was unclear what the "pursuant to" clause in § 3583(e)(3) modified. The clause may have pertained only to the district court's finding of a supervised release violation, rather than to its imposition of sentence. *See Mathena*, 23 F.3d at 92 (finding no support for "the proposition that Congress intended to change the advisory nature of the policy statements of Chapter 7 by its inclusion of the lone phrase 'pursuant to' in § 3583(e)").

tually plausible, results in nonsensical distinctions between similar proceedings. According to Davis, Congress made the Chapter 7 policy statements binding in supervised release revocation proceedings, but not probation revocation proceedings. Yet, he offers no reason why Congress would enact statutes requiring such a strange result. Yet another nonsensical result of Davis' argument is that, prior to the 1994 amendments, the Chapter 7 policy statements would have been binding only in supervised release revocation cases that did not involve drug possession.[14] No reason justifies drawing this distinction between supervised release cases involving drugs and those that do not. So, Davis' argument, while not foreclosed by the statute's ambiguous language, would lead to nonsensical results. We therefore reject his argument, for in statutory interpretation, "nothing is better settled than that statutes should receive a sensible construction, such as will effectuate the legislative intention, and, if possible, so as to avoid an unjust or an absurd conclusion." *In re Chapman,* 166 U.S. 661, 667, 17 S.Ct. 677, 680, 41 L.Ed. 1154 (1897); *see also Mathena,* 23 F.3d at 93. Although the supervised release and probation revocation statutes in effect at the time of Davis' sentencing did not contain identical language, there was no distinction in their text or purpose sufficient to yield the conclusion that Chapter 7's policy statements were binding in one type of proceeding and not the other.

In short, as we previously held in *Denard* with respect to probation revocation, we hold today, consistent with other circuits, that Chapter 7's policy statements are now and have always been non-binding, advisory guides to district courts in supervised release revocation proceedings.[15]

## III.

■ Finally, Davis maintains that, even if Chapter 7's policy statements were only advisory and not binding, the district court nonetheless erred because it failed even to consider the policy statements before imposing sentence. *See* 18 U.S.C. § 3583(e); *Hill,* 48 F.3d at 233; *Cohen,* 965 F.2d at 61; *Headrick,* 963 F.2d at 782; *Lee,* 957 F.2d at 774; *United States v. Baclaan,* 948 F.2d 628, 631 (9th Cir.1991). The flaw in Davis' argument here is his assumption that the district court did not consider the relevant policy statement. Given that it was cited repeatedly in the probation officer's worksheet and the oral and written arguments of Davis' counsel, the relevant policy statement was obviously within the district court's contemplation. The fact that the district court did not mention the three to nine month range provided by the policy statement is not dispositive. A court need not engage in ritualistic incantation in order to establish its consideration of a legal issue. It is sufficient if, as in the case at bar, the district court rules on issues that have been fully presented for determination. Consideration is implicit in the court's ultimate ruling.[16]

Having considered Chapter 7's policy statements, the district court was free to exercise its informed discretion to reject the suggested sentence of twelve months and to

---

14. Prior to the 1994 amendments, most supervised release revocations were controlled by § 3583(e)(3), but those involving possession of a controlled substance were then governed by § 3583(g). The latter provision, unlike the former, contained no reference to the policy statements. Thus, if Davis' view were adopted, the Chapter 7 policy statements would only have been binding in supervised release revocation cases that did not involve drug possession. *See Mathena,* 23 F.3d at 92–93 (rejecting interpretation of § 3583 that produces this distinction).

15. Our holding that the Chapter 7 policy statements were not binding on the district court disposes of Davis' argument that the district court made an unlawful departure from the Sentencing Guidelines. It is well established that "[a] sentence which diverges from advisory policy statements is not a departure." *Mathena,* 23 F.3d at 93 n. 13.

16. *See Anderson,* 15 F.3d at 284 (holding that district court need not make explicit, detailed findings to establish its consideration of Chapter 7 policy statements); *Lee,* 957 F.2d at 775 (finding that district court considered Chapter 7 policy statements despite absence of specific reference in its order); *cf. Baclaan,* 948 F.2d at 631 (holding that district court considered only U.S.S.G. § 7B1.4(a), and not § 7B1.4(b)(2), where record did not show latter provision was put before court).

impose a statutorily-authorized sentence of twenty-four months.

*AFFIRMED*.