UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 98-4427

RUSSELL COLEMAN BENNETT, a/k/a
Rusty Russell Mott,
Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, District Judge.
(CR-98-8)

Submitted: January 29, 1999

Decided: February 17, 1999

Before LUTTIG, MOTZ, and TRAXLER, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Margaret McLeod Cain, Charlottesville, Virginia, for Appellant. Robert P. Crouch, Jr., United States Attorney, Jean B. Hudson, Assistant United States Attorney, Charlottesville, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Russell Coleman Bennett appeals his twenty-four-month sentence imposed for violations of his supervised release. On appeal, Bennett argues that the government presented insufficient evidence to support the district court's determination that he committed the supervised release violations and that the district court erred in departing upward from the guideline sentencing range. Because we find that the evidence was sufficient to support the supervised release violations and the sentence was appropriate, we affirm.

Following Bennett's convictions for conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. § 846 (1994), and using a firearm in connection with a drug trafficking offense, in violation of 18 U.S.C.A. § 924(c) (West Supp. 1998), the United States District Court for the Eastern District of Pennsylvania departed downward for Bennett's substantial assistance to the government and imposed a sentence of twelve months in prison to be followed by a five-year term of supervised release. Bennett's pre-departure sentencing range was 117 to 135 months (57 to 71 months for the drug conviction plus a consecutive 60-month term for using or carrying a firearm in connection with a drug trafficking offense).

Bennett's supervised release began on July 8, 1994, in the Eastern District of Pennsylvania. Bennett incurred numerous supervised release violations, including several home confinement violations, violations for failure to keep and maintain appointments with the mental health treatment facility, failure to obtain employment as directed, and several urine tests that were positive for cocaine or marijuana. On October 7, 1996, the district court in Philadelphia found Bennett in violation of the terms of his supervised release. However, the court allowed him to remain on supervision on the condition that he be placed in the Comprehensive Sanction Center for six months.

In early 1998, Bennett requested to relocate to the Western District of Virginia to live with his mother. The Probation Office in Virginia conducted an investigation, determined that the transfer was appropriate, and accepted Bennett's supervision. The Probation Office dis-

cussed with Bennett his conditions of supervision, travel restrictions, the Western District of Virginia's firearms policy, and Bennett's continued participation in psychiatric counseling. On February 12, 1998, a Transfer of Jurisdiction Order was signed by Judge Michael, accepting jurisdiction in the Western District of Virginia.

On March 11, 1998, the probation officer conducted a home visit to Bennett's residence. There, the probation officer learned from Bennett's mother that Bennett had left the district and traveled to Philadelphia, Pennsylvania. The probation officer contacted Bennett in Philadelphia on March 13, 1998, and directed him to report to the probation office on March 16, 1998, at 9:00 a.m. After Bennett failed to appear as directed, the probation officer called Bennett's residence and learned from his mother that Bennett had not returned from Philadelphia. The probation officer left a message for Bennett to contact the probation office immediately upon his return. As of March 20, 1998, Bennett had not contacted the probation office.

The probation officer then filed a motion to revoke Bennett's supervised release, alleging that Bennett violated four of the standard conditions of supervision. Specifically, the alleged conditions violated were the requirements that Bennett not leave the judicial district without permission of the court or probation office, that he report to the probation office as directed, that he follow instructions of the probation officer, and that he work regularly at a lawful occupation, unless excused by the probation officer. The probation officer noted that these violations constitute Grade C violations, with a statutory maximum sentence upon revocation of three years imprisonment as to each count and a guideline imprisonment range of 4 to 10 months. The probation officer also noted that the guidelines provide that where the original sentence was the result of a downward departure, such as a reward for substantial assistance, an upward departure may be warranted.

Bennett admitted that he was instructed to report to the probation office in Virginia on March 16, 1998, and that he did not report as directed. However, he testified that he had car trouble and was unable to return from Philadelphia in time for that appointment. Concerning his travel outside the district without permission, Bennett testified concerning his previous travel between Pennsylvania and Virginia

3

and that each time, he had written permission from his probation officer in Pennsylvania. For his March 11, 1998 trip, because his last permission to travel form permitted him to remain in Virginia indefinitely, Bennett asserted that he thought he could return to Pennsylvania without seeking permission from the Virginia probation officer. Bennett also testified that because he was not informed that jurisdiction had been transferred to Virginia, he did not know that he was expected to report to the Virginia probation office.

The government produced evidence that Bennett met with a probation officer from Virginia in January 1998, and was informed that the Virginia office had accepted supervision of him. Also, Bennett filed a monthly report with the Virginia office for February 1998.

The district court found incredible Bennett's asserted confusion as to who was supervising him in March 1998. The court also found by a preponderance of the evidence that Bennett left the judicial district without permission from the probation office and failed to report to the probation office as directed, both in violation of the conditions of his supervised release. The court revoked Bennett's supervised release and, considering his prior conduct while under supervision and the substantial downward departure he received at his original sentencing, sentenced him to a twenty-four-month term of imprisonment.

On appeal, Bennett asserts that the district court erred in finding that he had violated the terms of his supervised release for noncriminal conduct. However, conduct need not be criminal to violate a condition of supervised release. See United States v. McCormick, 54 F.3d 214 (5th Cir. 1995) (failure to maintain employment); United States v. Webb, 30 F.3d 687 (6th Cir. 1994) (failure to comply with reporting and monitoring provisions). The district court, in its discretion, may revoke supervised release upon finding a noncriminal violation of supervised release. See 18 U.S.C.A. § 3583(e)(3) (West Supp. 1998); U.S. Sentencing Guidelines Manual § 7B1.3(a)(2) (1997).

In this case, the district court found that Bennett violated two conditions of his supervised release by leaving the district without permission and by failing to report to the probation office as directed. Although Bennett does not contest the facts that he left the judicial

4

district and that he did not report to the probation office on March 16th as directed, he asserts that he did not know that he was subject to supervision and jurisdiction in Virginia or that he was required to obtain permission prior to traveling back to Pennsylvania. In light of the conversations Bennett admits having with persons from the Virginia Probation Office and the fact that Bennett mailed to the Virginia Probation Office his monthly report of his activities during February 1998, the district court appropriately found Bennett's assertions incredible. There was sufficient evidence to support the district court's finding that Bennett committed the violations. Also Bennett's challenges to the district court's credibility determination are not reviewable on appeal. See United States v. Saunders, 886 F.2d 56, 60 (4th Cir. 1989). We find no abuse of discretion in the district court's determination to revoke Bennett's supervised release upon its finding of violations of the terms of his supervised release.

Bennett also contends that the district court's decision to depart upward from the guideline range was unreasonable. Upon revocation of Bennett's supervised release, the district court appropriately referred to the revocation table in the guidelines. Because the conduct constituting the violations was noncriminal activity in violation of terms or conditions of supervision, the violations are Grade C violations. See USSG § 7B1.1(a)(3). Upon finding a Grade C violation, the court is authorized to revoke supervised release, extend the terms of supervision, and/or modify the conditions of supervision. See USSG § 7B1.3(a)(2). Section 7B1.4(a) provides that for a Grade C violation, the imprisonment range for a person with a criminal history category II is 4 to 10 months. This policy statement suggesting a guideline range is a non-binding, advisory guide. See 18 U.S.C.A. § 3553(a)(4)(B) (West Supp. 1998); United States v. Davis, 53 F.3d 638, 642 (4th Cir. 1995). A sentence above the recommended range for a violation of supervised release may be warranted "[w]here the original sentence was the result of a downward departure (e.g., as a reward for substantial assistance)." USSG § 7B1.4, comment. (n.4). Bennett's original sentencing range was 117 to 135 months. He received a significant departure for substantial assistance resulting in a twelve-month sentence. In light of Bennett's numerous supervised release violations while in Pennsylvania and his violations almost immediately after his transfer to Virginia, the district court's decision to impose a sentence above the suggested range in § 7B1.4(a) was

5

reasonable. Also, we note that Bennett's sentence was well within the statutory maximum sentence upon revocation of three years as to each count. See 18 U.S.C.A. § 3583(e)(3). Because Bennett's sentence does not exceed the maximum statutory limit established for violation of the terms of release in Class B offenses under 18 U.S.C.A. § 3583(e)(3), this court reviews Bennett's sentence only to determine if it is plainly unreasonable. See 18 U.S.C.§ 3742(a)(4) (1994). Given the facts of this case and the nature of Bennett's conduct, we cannot say that the twenty-four-month sentence imposed by the district court was plainly unreasonable.

Accordingly, we affirm the district court's order revoking Bennett's supervised release and imposing a twenty-four-month sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

6