UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

v.                                                    No. 01-4917

MARVIN JOHNSON,
              *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
Terrence W. Boyle, Chief District Judge.
(CR-95-123)

Argued: October 31, 2002

Decided: January 8, 2003

Before TRAXLER, KING, and GREGORY, Circuit Judges.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Thomas Peter McNamara, Federal Public Defender, Raleigh, North Carolina, for Appellant. Anne Margaret Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Stephen C. Gordon, Assistant Federal Public Defender, Raleigh, North Carolina, for Appellant. John Stuart Bruce, United States Attorney, Scott L. Wilkinson, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Marvin L. Johnson appeals the district court's revocation of his term of supervised release and imposition of a fifty-month prison sentence. Finding no error, we affirm.

I.

On July 18, 1995, Johnson was indicted along with 21 others on charges of conspiracy and possession with intent to distribute cocaine base, in violation of 21 U.S.C.A. §§ 846 and 841(a)(1) (West 1999). Upon his guilty plea to the conspiracy offense, Johnson was sentenced to a prison term of 292 months and a supervised release term of 60 months. The government thereafter filed a motion to reduce Johnson's sentence to reflect substantial assistance he provided. *See* Fed. R. Crim. P. 35(b). The court reduced Johnson's prison sentence to 60 months, but left all other conditions in effect. Johnson left prison on December 4, 1998, and began his term of supervised release.

Seven months later, as a result of a gambling charge, Johnson's supervision was modified to include three weekends in jail. The court also directed Johnson to refrain from gambling and frequenting places where illegal alcoholic beverages were used or sold. In October 2000, the district court was notified that Johnson had twice tested positive for cocaine and marijuana. Again, the court modified Johnson's supervision — this time to include substance abuse treatment. Although he completed the program, Johnson tested positive for cocaine use during three subsequent urine screens: April 27, June 12, and June 25, 2001. The district court was again alerted and subsequently modified Johnson's supervision to include a 90-day halfway house placement. Johnson entered the Cavalcorp Community Sanction Center in August 2001. During his stay at Cavalcorp, Johnson

was cited for four disciplinary infractions, including failure to perform an assigned chore, repeated incidents of unsanitary deportment, and insolence. Having accrued other violations, including failure to abide by dormitory restrictions, illicit possession of a cell phone, and further acts of insolence toward the Cavalcorp staff, Johnson was terminated from the program.

The United States Probation Office filed a motion to revoke Johnson's supervision on October 22, 2001, based on his failure to fulfill the requirements of his community corrections placement as required by the terms and conditions of his supervised release. The motion described Johnson's gambling, his repeated drug use, his failure to comply with the rules at Cavalcorp, and his dismissal from the program. Johnson appeared before the district court on November 5, 2001. A supervised release worksheet prepared by the Probation Office for the revocation hearing characterized Johnson as having committed a Grade C violation, listed his criminal history category as VI, and noted that the range of imprisonment suggested under U.S.S.G. § 7B1.4(a) was 8-14 months.

At the hearing, Johnson admitted the violation. The court probed Johnson to determine whether he had anything he wanted to say, reminding Johnson that in a letter he sent after his initial sentencing, Johnson had complained that he was unaware that he could "tell [the judge] what [he] wanted to say about [his] sentence." J.A. 24. Johnson then apologized for "having to come back through the system again." J.A. 24. The judge then went over with Johnson the initial sentence of 292 months, the reduction to 60 months, and the actual time Johnson had served, which amounted to around two years. The court then heard from the probation officer, who described Johnson as having been "borderline compliant," recounted having "sent three modifications" to the judge because of Johnson's various violations, and noted that Johnson had refused to follow the instructions of the Cavalcorp program from which he was dismissed. J.A. 25. The probation officer also described Johnson's persistent trouble with cocaine and noted that after Johnson was discharged from the Cavalcorp program, he was cited for driving while impaired and driving while his license was revoked.

The court followed up the probation officer's remarks by asking Johnson about a convicted drug felon with whom Johnson had been

associated and at whose trial Johnson had been prepared to testify. Johnson acknowledged that the individual had received a life sentence. The court once again asked Johnson if he had anything else he wanted to add, whereupon Johnson admitted that three of the positive drug tests referred to in the revocation motion were accurate. The court proceeded to impose a prison term of fifty months, censuring Johnson for reappearing in court and explaining to him that the sentence was warranted because Johnson had been given the benefit of a significant downward departure from the 292 months originally imposed. This appeal followed.

## II.

We review the reasonableness of a district court's decision to revoke a term of supervised release for abuse of discretion. *See United States v. Davis*, 53 F.3d 638, 642-43 (4th Cir. 1995). The district court need only find a violation of a condition of supervised release by a preponderance of the evidence. *See* 18 U.S.C.A. § 3583(e)(3) (West 2000). Here, Johnson admitted the violation alleged in the petition to revoke his release. Accordingly, the district court did not abuse its discretion in revoking his release.

A sentence that falls within the range authorized by statute and imposed upon revocation of supervised release is reviewable only if it is "plainly unreasonable." 18 U.S.C.A. § 3742(a)(4) (West 2000). Johnson argues that a fifty-month sentence for his violation of supervised release was plainly unreasonable. He complains that he committed only "a minor violation of the conditions of his supervised release," Brief of Appellant at 9, and that he was sentenced to a term of imprisonment which substantially exceeded the prescribed guideline range and which "bore absolutely no relation to the violation alleged against" him. Brief of Appellant at 12. We disagree.

Johnson's underlying conviction was for a Class A felony, for which the statutory maximum sentence upon revocation was five years incarceration. *See* 18 U.S.C. § 3583(e)(3) (West 2000). Under the Guidelines, the suggested imprisonment range for a defendant found guilty of a Grade C offense with a criminal history category of VI is eight to fourteen months incarceration for a violation of the terms of supervised release. *See* U.S.S.G. § 7B1.4(a). It is well estab-

lished, however, that Chapter 7 policy statements are "non-binding, advisory guides." *Davis*, 53 F.3d at 642; *see also United States v. Denard*, 24 F.3d 599, 602 (4th Cir. 1994). If the court has considered the relevant factors and the applicable policy statements, the court has the discretion to impose a sentence outside the ranges set forth in the Guidelines. *See Davis*, 53 F.3d at 642.

The record clearly establishes that the court imposed a sentence based on a review of Johnson's conduct throughout the term of his supervision. As the probation officer reminded the court at the hearing, Johnson had been "borderline compliant" since his release, having repeatedly violated the terms and conditions of his supervised release. J.A. 25. As well as the initial gambling incident, the record indicates numerous positive tests for the use of marijuana and cocaine — before and after Johnson participated in court-approved substance abuse treatment. With each violation, the district court made efforts to refine Johnson's supervision, providing him with treatment and placement programs, instead of revoking his release, as was within the court's discretion. The probation officer described Johnson's Cavalcorp placement as a "final attempt to assist Mr. Johnson in making a behavioral change." J.A. 19. Johnson does not dispute that he was terminated from the program only after four incident reports were filed against him. It took numerous violations within that one program — including his insolent treatment of the program supervisor — before he was asked to leave. Although he was encouraged to seek drug treatment while participating in the Cavalcorp program, he resisted; and, upon his termination from the center, he was charged with driving while impaired and driving with a revoked license. The record clearly demonstrates that the Probation Office and the district court made considerable attempts to assist Johnson in modifying his behavior and avoiding more prison time. Although Johnson acknowledged these numerous efforts at the revocation hearing and apologized for not having taken advantage of them, this does not change the fact that Johnson resisted the government's repeated efforts at assistance as they were made.

Johnson also argues that the judge punished him merely for appearing before him — suggesting that any violation would have led to the severe punishment he received. As described above, the record tells a different story. In fact, the court showed notable forbearance on

prior occasions by repeatedly amending the terms of Johnson's supervised release and reorienting it to better assist Johnson in rehabilitation. By contrast, Johnson himself has demonstrated what amounts to perpetual indifference to the numerous advantages and accommodations he has received. Johnson's record shows that he has his own conduct to blame for both the numerous grounds for and substantial scope of that departure.

Moreover, the commentary to the Guidelines specifically provides that "[w]here the original sentence was the result of a downward departure (*e.g.*, as a reward for substantial assistance) . . . an upward departure may be warranted." U.S.S.G. § 7B1.4, comment. (n.4). Johnson was originally sentenced to 292 months imprisonment for pleading guilty to participation in a large drug conspiracy. As a result of the downward departure for his substantial assistance and credits Johnson earned while incarcerated, Johnson served only about two years in prison. The fact that Johnson had provided substantial assistance to win the departure was obvious even at the revocation hearing, where the court and Johnson spoke about the drug dealer against whom Johnson had been prepared to testify. Just as obviously, the court bore in mind the life sentence imposed upon Johnson's former associate and the substantial sentence Johnson had avoided by his initial willingness to cooperate. That the court was unwilling to continue to accommodate Johnson's repeated failure to comply with the terms of his supervised release and instead decided to impose a steep sentence was clearly within its discretion and not plainly unreasonable.

## III.

Given the facts of this case and the nature of Johnson's conduct, we do not believe that the fifty-month sentence imposed by the district court was plainly unreasonable. Consequently, we affirm Johnson's sentence.

*AFFIRMED*