NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:   14a0109n.06

**12-4547**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 07, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| LEAVY A. WELCH, | ) | NORTHERN DISTRICT OF OHIO |
| | ) | |
| Defendant-Appellant. | | |

Before:   DAUGHTREY, GIBBONS, and DONALD, Circuit Judges.

MARTHA CRAIG DAUGHTREY, Circuit Judge.   Leavy Welch pleaded guilty to distributing crack cocaine, possessing powder cocaine with the intent to distribute, and maintaining a drug-involved premises.   The district court sentenced him below the applicable Guidelines range to 120 months' imprisonment.   He now appeals his sentence, claiming that it was procedurally and substantively unreasonable.   In particular, he objects to the district court's determination of his criminal history category and his designation as a career offender.   He also claims that the district court failed to address adequately the sentencing factors set out in 18 U.S.C. § 3553(a).   For the reasons set out below, we find no reversible error and affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Welch was indicted in federal court on four drug-related charges:  distribution of 53.6 grams of crack cocaine, distribution of 37.8 grams of crack cocaine, possession with intent to distribute 60 grams of powder cocaine, and using/maintaining a drug-involved premises.   Welch

and the government reached a plea agreement under which Welch agreed to plead guilty to all four counts in the indictment. The parties did not agree on a sentence or a sentencing range but did agree that Welch's base offense level was 26, unless Welch was classified as a career offender, in which case they agreed that his base offense level would be 34. The parties also failed to agree on Welch's criminal history category but noted that, if Welch were classified as a career offender, a criminal history category VI would automatically apply.

Before Welch pleaded guilty, the district court ordered a pre-plea report, in which the probation department indicated that Welch was a career offender and had 18 criminal history points based on prior convictions. The report indicated that under the Guidelines, and in light of a proposed three-point reduction for acceptance of responsibility, Welch should be sentenced at an offense level of 31 with a criminal history category of VI, which would result in a Guidelines range of 188-235 months.

Welch submitted written objections to the presentence report and also filed a sentencing memorandum. He contended that category VI over-represented his criminal history; that the probation office had improperly assessed criminal history points for certain prior convictions, thereby increasing his criminal history category from III to VI; and that he was improperly designated as a career offender because his Ohio conviction did not meet the requirements for a predicate felony. Welch also argued for a downward departure from the advisory range of 188-235 months and asked the court to consider the remorse he had shown for his past criminal conduct, noting that he was responsible for his mother financially, that he suffered from addiction to alcohol and drugs, and that he had a supportive family and community. He claimed that even

if the advisory range of 188-235 months were correct, he merited a downward departure because many of his prior convictions were quite old and were for driving-under-suspension offenses, unrelated to drugs. Thus, Welch argued, his criminal history computation did not accurately reflect his past criminal conduct and was not indicative of future conduct. He asked the district court to sentence him to a base offense level of 26, with a three-level reduction to 23 for acceptance of responsibility, and to apply criminal history category III, for an advisory Guidelines range of 57-71 months.

Welch subsequently submitted character letters from various individuals in his community, including his mother and aunt, a family friend, church leaders, a business owner who said he would employ Welch upon his release, and his nephews. The letters discussed the trauma Welch experienced when his older brother was murdered in August 2000, explained that Welch was raising his brother's children, noted the absence of a father figure in Welch's life, and emphasized the fact that his fiancée had recently given birth to their son. The materials also indicated that he was active in his church. In response, the probation department addressed Welch's objections to the criminal history category and his designation as a career offender in its final presentence report, confirming the earlier conclusion that Welch qualified as a career offender and that category VI applied.

The government also submitted a sentencing memorandum, taking the position that Welch was properly designated a career offender based on his prior convictions and that his criminal history category was properly scored as VI. However, the government conceded that there might be factors to support a downward variance – specifically, the circumstances of Welch's

3

fourth-degree felony conviction in 2001 and the fact that Welch was properly viewed as a relatively low-level, "ounce-type" drug dealer. The government further conceded that Welch's driving offenses may have inappropriately yielded a criminal history category of VI. It was "open to question," the government stated, whether Welch was the type of individual whom the Sentencing Commission envisioned being sentenced under the career-offender provision.

At sentencing, the district judge indicated that he had read and reviewed the government's and defense counsel's sentencing memoranda. Initially, the district judge asked defense counsel whether counsel was "objecting to the criminal history calculation or [] saying it overrepresents?" Defense counsel responded, "Judge, the objection I believe specifically goes to the over-representation of his criminal history." The district judge noted that Welch had 18 criminal history points and asked, "You're not challenging any of the points?" Defense counsel responded, "No." The district judge then asked, "Well, then am I correct that there are no objections to the report?" Defense counsel answered, "That's correct, Your Honor."

The district court then explained that it must begin its sentencing calculations at a base offense level of 26 and accepted the government's recommendation for a three-level downward departure for acceptance of responsibility. However, because Welch was a career offender, the district court stated that his base offense level must jump to 34. Considering the downward departure to offense level 31 for acceptance of responsibility and Welch's criminal history category of VI, the district court identified "a career offender range" of 188-235 months, and a "straight guideline range" of 92-115 months. The district judge then asked both parties, "And do we agree those are the two ranges, 92 to 115 on straight Guidelines, and the 188 to 235 as career

offender?" Defense counsel responded, "That's correct, Your Honor." The government agreed, stating, "That's correct on behalf of the government." The district judge then gave both attorneys and Welch an opportunity to speak.

Defense counsel said, "Judge, you've indicated to and looked at my sentencing memorandum and the attachments to my memorandum which w[ere] filed later on. . . . [A]nd I believe I accurately stated our position in my sentencing memorandum." Counsel then argued that the career-offender range was unduly harsh given Welch's prior convictions and the fact that Welch went to prison for only one of his predicate felonies. Counsel pointed out that many of Welch's criminal history points were acquired when he was 19 years old and were for driving offenses unrelated to drugs. Counsel referred to Welch's loving and supportive family and stated that, if the district judge declined to apply the base offense level of 26, he would ask the district judge to sentence Welch within the guideline range of 92-115 months.

During allocution, Welch apologized to his family, many of whom were in the courtroom, stated that he had accepted responsibility for his bad choices, and explained that his brother's murder had had a significantly negative effect on him. Since his brother was killed, Welch said, he had taken care of his niece and nephews, and after he was arrested and detained, those children had been getting in trouble and doing less well in school. Welch also told the district court that within three weeks of his being arrested, his fiancée told him that she was pregnant "and that [it] just shook the ground for me." He said that he wanted his son "to know that he does have a father that he can look up to that does love him. . . . He is my fuel for me to turn my life around, for me to do the right thing."

5

Welch also explained that he had a plan to change his life, telling the court that he had completed a drug abuse program in jail and wanted to attend another 500-hour drug program while incarcerated. He said that he was pursuing an associate's degree in business management and planned to continue his 12-step program with Alcoholics Anonymous and Narcotics Anonymous. He noted that he had a church mentor in his home community and a job awaiting him with Flashback Studios when he was released from custody. Finally, he told the court that his family had "a long history of fathers not being in our lives" and that he wanted to "break the mold" by being present in his son's life.

The district judge indicated that he had reviewed the parties' memoranda and the presentence report and had listened to Welch's statement. He noted that he was required to learn everything he could about the crimes of conviction, calculate the advisory range, and consider the other factors set out in the sentencing statute, so that the sentence imposed would be no longer than necessary to accomplish the statutory purposes of sentencing, "[p]unishment, deterrence, protecting the community, and rehabilitation." The district judge expressed his misgivings about the rigidity of career-offender status, indicating that Mr. Welch did not "seem to meet the profile." Nonetheless, he felt bound to consider the Guidelines range and give it some weight, while acknowledging that the Guidelines were advisory only. Ultimately, he followed the practice he had applied in similar cases and imposed a sentence "between what the straight Guidelines sentence would be and what the career offender sentence would be, because I find that that's sufficient but not greater than necessary."

Accordingly, the district court sentenced Welch at offense level 26 and criminal history category VI, which yielded a range of 120-150 months. The district judge concluded that a sentence of 120 months, at the low end of that range, was appropriate. He noted that 120 months "just happens to be just a touch over the high end of the straight guideline range of 92 to 115, so that's another measure of appropriateness." The district judge asked whether either counsel had any objections to the sentence. Both attorneys responded, "No." The district court gave each party one last opportunity to make statements on the record, which they declined.

## DISCUSSION

We review the district court's interpretation of the sentencing Guidelines *de novo* and its sentencing determination under an abuse-of-discretion standard, asking whether the sentence was procedurally and substantively reasonable. *United States v. Baker*, 559 F.3d 443, 448 (6th Cir. 2009); *see also Gall v. United States*, 552 U.S. 38, 51 (2007). Here, Welch challenges both the procedural and substantive reasonableness of his sentence, raising a number of objections – primarily to the district court's determination of his criminal history category and career-offender status.

A defendant merits career-offender status if, among other things, he has two qualifying, predicate felony convictions. U.S.S.G. § 4B1.1(a). A conviction for a controlled-substance offense qualifies as a prior felony conviction for career-offender purposes if the offense is punishable by a term of imprisonment exceeding one year. *Id.*; *see also id.* at § 4B1.2 (b). In this case, Welch challenges the sentencing court's reliance on one of his prior convictions: a

7

fourth-degree felony offense for attempted preparation of drugs for sale. Welch claims that Ohio law required the state court to impose the minimum term of six months' imprisonment unless it made certain findings, which, Welch contends, the Ohio state court did not make when sentencing Welch for that offense. However, he does not offer any evidence to support that claim. Nor does he contest the fact that, under Ohio law, a fourth-degree felony is punishable by a term of imprisonment between six and 18 months, Ohio Rev. Code Ann. § 2929.14(A)(4). Hence, pursuant to the Guidelines, the conviction qualifies as a predicate felony for career-offender purposes regardless of the actual sentence imposed. *See* U.S.S.G. § 4B1.2. We thus conclude that the district court properly determined that Welch was a career offender.

Welch also argues that the district court erred in calculating his criminal history category, contending that he should have been sentenced at category III, not category VI. However, an individual who is deemed a career offender is automatically scored as having a criminal history category VI. U.S.S.G. § 4B1.1(b) ("A career offender's criminal history category in every case under this subsection shall be Category VI."). As a result, even if Welch were correct that the presentence investigation report improperly assessed criminal history points for some of his past offenses, because he is properly classified as a career offender, his criminal history category is automatically VI.

Welch next argues ─ equally unpersuasively ─ that the district court improperly viewed the Guidelines as mandatory. Although a sentencing judge must not treat the Guidelines as mandatory, the district judge nonetheless must accurately calculate the applicable range. *Gall*, 552 U.S. at 49; *United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008) ("District courts, as a

matter of process, must properly calculate the Guidelines range."). Welch cherry-picks statements the district judge made at sentencing to support his assertion that the district judge viewed the Guidelines as mandatory. In fact, when read in its entirety, the sentencing transcript clearly shows that the district judge calculated the Guidelines range as he was required to do and then treated that range as advisory.

Nor is there any support in the record for Welch's contention that the district court did not address his claim that a criminal history category of VI and career-offender status over-represented his criminal record. In fact, the district court agreed with Welch that his status as a career offender over-represented his criminal history and, accordingly, considered what his sentence would be if he were *not* classified as a career-offender, ultimately sentencing him below the Guidelines range for career offenders convicted of the offenses to which he had pleaded guilty. The transcript of the sentencing hearing indicates the district court's concern, expressed in this statement: "I've always felt the problem with career offender is that it's like an on and off switch. And it in my view should be more calibrated because there are some people like you, Mr. Welch, who technically score as career offender but don't seem to meet the profile." The district court then noted that it was required to "give some weight to the career offender designation" but ultimately sentenced Welch below the Guidelines range for a career offender with a criminal history category of VI, based on the precise analysis that Welch now claims was not made.

Just as pointless is Welch's claim that the district court erred in assessing criminal history points for convictions that occurred outside the 10-year limit provided in U.S.S.G. § 4A1.2(e)(2). Because Welch was sentenced as a career offender, however, his criminal history category is

automatically VI, regardless of how his criminal history category would otherwise be calculated. *Id.* At § 4B1.1 (b). Thus, we need not determine whether the district court properly calculated the criminal history category that would have applied if Welch were not a career offender.

Welch also claims error in the district court's failure to address each of his arguments for a downward variance specifically, including his personal history and family ties, and the court's failure to explain the weight given to each of the § 3553(a) factors. Because Welch failed to raise these objections at the hearing, we review them for plain error only. *See United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004).

Here, again, Welch's argument fails, because there was no error – plain or otherwise. The district court's explanation of Welch's sentence satisfied § 3553(a) because it made "clear that [it] considered the required factors." *United States v. Washington*, 147 F.3d 490, 491 (6th Cir. 1998) (quoting *United States v. Davis*, 53 F.3d 638, 642 (4th Cir. 1995) (stating that there is no need for "ritualistic incantation" of the § 3553(a) factors)); *see also* 18 U.S.C. § 3553(a) (stating the factors a court "shall consider" in determining an appropriate sentence). Congress did not intend to require sentencing judges to "give the reasons for rejecting any and all arguments by the parties for alternative sentences." *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (*en banc*). In this case, the district court's explanation for the sentence imposed reflected full consideration of the § 3553(a) factors and highlighted the defendant's specific arguments for leniency. In sum, we conclude that the sentence imposed was not procedurally unreasonable.

Nor do we find that the sentence was substantively unreasonable, a question we review under an abuse-of-discretion standard.  *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007); *see also Gall*, 552 U.S. at 51.   "A sentence may be substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable amount of weight to any [one] factor." *United States v. Vowell*, 516 F.3d 503, 510 (6th Cir. 2008) (internal citations, quotations, and alterations omitted).   A substantively reasonable sentence is "proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)."  *Id.* at 512 (internal citations and quotations omitted). Here, Welch claims that the district court imposed an arbitrary sentence, failed to consider the § 3553(a) factors, and gave undue weight to Welch's criminal history.   As with Welch's procedural claims, we find none of these persuasive.

For example, Welch claims that the district court's decision to sentence him at offense level 26 was arbitrary.   But, level 26 was the agreed-upon base offense level in the parties' plea agreement and also the offense level for which defense counsel advocated in its objection to the presentence investigation report.   Moreover, as already discussed, the district court adequately addressed the  § 3553(a) factors.   Finally, the district court did not give undue weight to Welch's criminal history. If anything, the weight the district court gave to Welch's criminal history worked in Welch's favor and led to a sentence below the Guidelines range applicable to a career offender sentenced at offense level 31.   Thus, Welch has failed to demonstrate that his sentence was substantively unreasonable.

11

CONCLUSION


For the reasons set out above, we AFFIRM the judgment of the district court.